[No. 45684.   En Banc.   February 1, 1979.]

CHARLES PANNELL, ET AL, *Appellants,* V. GERALD
THOMPSON, *as Secretary of the Department
of Social and Health Services,
Respondent.*

*Patrick Henry McIntyre, Gerald R. Tarutis,* and *Tony Lee* of *Evergreen Legal Services* (Seattle), for appellants.

*Slade Gorton, Attorney General, Richard A. Mattsen, Senior Assistant,* and *Walter E. White* and *David R. Minikel, Assistants,* for respondent.

STAFFORD, J.—This class action was submitted to the trial court by affidavit and documentary evidence only. The class has appealed from a judgment dismissing their claim for declaratory and injunctive relief.

██ Appellants have not assigned error to any finding of fact; consequently, the unchallenged findings become established facts of the case. *Lakeside Pump & Equip., Inc. v. Austin Constr. Co.,* 89 Wn.2d 839, 842, 576 P.2d 392 (1978). The findings and those facts upon which the parties appear to agree in their briefs indicate that appellants brought this action for declaratory judgment to prevent respondent Secretary of the Department of Social and Health Services (DSHS) from implementing a proposed reduction in payments made under a "non–continuing" general assistance program (GAN).

The GAN program is an exclusively state–funded and state–administered plan of "non–continuing" general assistance for unemployed employable persons. Recipients of GAN funds must have exhausted all private nonexempt or public resources and must have applied for all other public benefits. WAC 388–37–230. They also must have registered for employment with the Employment Security Department, must meet work registration and work search requirements and must accept bona fide employment offers. WAC 388–27–215(3)(7). Applicants are certified for a fixed period of time at the expiration of which they must reestablish eligibility as a new applicant. In most cases the certification period is 2 weeks although it may extend to 30 days. At trial it generally was agreed that approximately 5,000 persons a month received GAN payments. The GAN program is to be distinguished from "continuing" assistance programs under which recipients remain eligible until some change in circumstances results in termination (*e.g.,* Aid to Family with Dependent Children).

Prior to August 1977 GAN recipients were provided between $53–$60 a month from the *basic* GAN assistance appropriation. Proportionately higher amounts were authorized depending upon the number of recipients in a household. For the 1977–79 biennium, however, the Legislature specifically earmarked an *additional* $6,090,000 to permit *increases* in GAN payments above the amount provided in the *basic* appropriation. Laws of 1977, 1st Ex.

Sess., ch. 339, § 57(7), p. 1444 (hereinafter § 57(7)). Pursuant to § 57(7) DSHS *increased* the allowance from the *basic* amount of $53–$60 funded under the *basic* appropriation to $201–$212 per month. As with the *basic* GAN payments, proportionately higher amounts were authorized based upon the number of recipients in a household. Significantly, however, the § 57 appropriation of funds for GAN *increases* contained the following specific limitations:

> The *appropriations contained in this section shall be subject to the following conditions and limitations:*
>
> . . .
>
> (7) *Not more than $6,090,000 shall be expended to provide increases* in noncontinuing general assistance grants.

(Italics ours.)

The trial court's oral opinion appears to bear out appellants' contention that both the Legislature and DSHS were aware $6,090,000 would be insufficient to support the *increase* in GAN payments for the entire biennium. Some legislators thought the Legislature could reconsider the matter when the Governor called it into extraordinary session. However, the Governor did not call a special session and thus the Legislature was not able to consider whether additional funds should be appropriated to continue further support for the *increased* GAN payment.

As might have been expected, the $6,090,000 appropriated for GAN grant *increases* was fully expended well before the end of the biennium. When the funds allotted for such increased grants had been expended completely, the Governor directed DSHS to file Administrative Order 1316 with the Code Reviser. The order, filed July 17, 1978, reestablished the GAN grant levels in effect prior to the appropriation authorizing the *increase* (*i.e.*, between $53–$60). Based upon the total depletion of the $6,090,000, Administrative Order 1316 was characterized as an "emergency" order to take effect immediately as authorized by

RCW 34.04.030.[1] The DSHS statement in support of the alleged "emergency" asserted that the amount appropriated under § 57, for increases in GAN payments, had been depleted.

On July 17, 1978, appellants filed the instant class action seeking declaratory and injunctive relief. Initially the trial court issued a temporary restraining order. However, after a hearing on the merits, the trial judge dismissed appellants' case with prejudice, dissolved the temporary restraining order and denied the motion for preliminary injunction. Appellants' motion for a direct accelerated review by this court was granted. We affirm the trial court as modified herein.

In their opening brief, appellants assert the State has a constitutional duty to provide them with the *increased* GAN payments, citing Const. art. 8, § 7. However, since they expressly abandon the claim in their reply brief, we decline to consider the issue further. Similarly, appellants appear to contend they have a "vested" statutory "right" to a continuation of GAN grants at the increased levels. This claim also was abandoned in their reply brief and therefore will not be considered.

Appellants now assert a statutory "entitlement" to the increased GAN funds which they assert stems from RCW 74.08.040 which provides in pertinent part:

> For general assistance to *unemployed employable* persons, the department *shall establish standards. of assistance* based upon annual living cost studies and *compatible with a minimum necessary for decent and healthful subsistence.* Such standards shall permit the

---

[1]RCW 34.04.030. "If the agency finds that immediate adoption or amendment of a rule is necessary for the preservation of the public health, safety, or general welfare, and that observance of the requirements of notice and opportunity to present views on the proposed action would be contrary to the public interest, the agency may dispense with such requirements and adopt the rule or amendment as an emergency rule or amendment. The agency's finding and a brief statement of the reasons for its finding shall be incorporated in the emergency rule or amendment as filed with the office of the code reviser under RCW 34.04.040."

meeting of actual and emergent need on an individual basis.

(Italics ours.) They urge that the $53–$60 furnished them under the *basic* GAN allowance fails to comply with RCW 74.08.040 in that it is not "compatible with a minimum necessary for decent and healthful subsistence" and does not meet "actual and emergent need on an individual basis."

No one appears to argue seriously that the *basic* GAN payments of $53–$60 are sufficient to provide necessary subsistence for a single person. Clearly the grant levels under the basic GAN appropriation do not comply with the statement of need in RCW 74.08.040. Based on this fact appellants argue that DSHS is mandated to reinstate the *increased* GAN allowance. They assert that additional GAN funds may be obtained from either of two sources (1) transfer of money from other DSHS controlled appropriations, citing Laws of 1977, 1st Ex. Sess., ch. 339, § 51(7), p. 1438 (hereinafter § 51(7)) or, (2) a court order that DSHS must obtain, from the Governor or Legislature, the funds necessary to support the program at levels provided in RCW 74.08.040. We do not agree with either argument.

First, in light of the applicable legislation, any attempt to transfer funds from other DSHS programs to support *increased* payments under the GAN program would have placed the Secretary in the unenviable position of potentially violating a specific legislative mandate. Despite a *general* legislative directive contained in § 51(7) authorizing DSHS to transfer up to $10 million among its programs and a *general* legislative directive in Laws of 1977, 1st Ex. Sess., ch. 339, § 51(5), p. 1438 (hereinafter § 51(5)), prohibiting rateable reductions in grant payments, there is a *specific* directive applicable strictly to *increased* GAN funds which places a specific limitation on the expenditure of those funds. It provides that *not more than* $6,090,000 is to be expended on increases in GAN grant levels. § 57(7). Clearly there is an inconsistency between the *general* authorization for transfer of funds among DSHS

programs, the *general* directive against rateable reductions, and the *specific* limitation placed upon the expenditure of *increased* GAN funds in the GAN program. However, a basic rule of statutory construction reconciles this apparent inconsistency. When there is a conflict between one statutory provision which treats a subject in a *general* way and another which treats the same subject in a *specific* manner, the *specific* statute will prevail. *Olson v. University of Wash.*, 89 Wn.2d 558, 562, 573 P.2d 1308 (1978); *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 536 P.2d 157 (1975); *Johnston v. Beneficial Mgt. Corp. of America*, 85 Wn.2d 637, 538 P.2d 510 (1975); *Knowles v. Holly*, 82 Wn.2d 694, 513 P.2d 18 (1973); 2A Sutherland, *Statutory Construction* § 51.05 (4th ed. C. Sands 1973). Consequently, the *specific limitation* on expenditure of increased GAN funds to $6,090,000 prevails over the *general authorization* to transfer funds among DSHS programs and the *general* prohibition against rateable reductions.

An unchallenged finding of fact declared that the funds appropriated for increased GAN payments had been totally expended, *i.e.,* the specific statutory limitation of § 57(7) had been reached. Because this specific limitation was reached, *no further funds could be expended* although funds remained in other DSHS programs and possibly in the Governor's emergency appropriation fund. In short, only an amendment of legislative authorization can correct the insufficient funding in light of the Legislature's own specific limitation on the specific appropriation for GAN grant increases.

Appellants argue that both DSHS and the members of the legislature were aware that the $6,090,000 appropriated in § 57(7) would, in all probability, be insufficient. This is offered as a reason to believe that the § 57(7) specific limitation on expenditures does not mean what it says. We do not agree. Expectations of the DSHS staff are not relevant when attempting to devine the Legislature's intent

at the time of making and limiting the appropriation. Further, the fact that one legislator, in an affidavit, stated she recognized the insufficiency of the appropriated increase but believed, incorrectly, there would be a special session to consider possible additional increases is not helpful. What one legislator may have believed does not establish that the Legislature intended something contrary to its express declaration in § 57(7). Rather, if we assume the Legislature realized the insufficiency of its appropriation and still appropriated the amount it did, with a specific limitation on expenditures, we must also assume the Legislature intended to do exactly what it did. The Legislature may, as appellants argue, have intended to increase the appropriation, as needed, in a special session but this is not evidence of an intent to override the specific limitations of § 57(7) enacted in the current session. Rather, it is supportive of the specific limitation. The fact that some members of the legislature may have been frustrated in their hope for a special session to enable further review of the need for increased GAN funds does not change the limitation they imposed in § 57(7). At best it means only that the Legislature meant what it said and wanted an opportunity to review the financial picture at a later date.

Appellants' second contention would require DSHS to award the increased GAN grants in an amount sufficient to maintain the subsistence envisioned by RCW 74.08.040 despite the Legislature's failure to provide sufficient funds. Basically, it is appellants' position that if the Legislature authorizes a program it must fund it fully. *Bresolin v. Morris,* 86 Wn.2d 241, 543 P.2d 325 (1975) is cited as support for this contention. However, reliance upon *Bresolin* is misplaced. In *Bresolin* we did not order DSHS to provide funds to carry on a legislatively authorized program despite an insufficient appropriation of funds. Rather, we ordered DSHS to request the Legislature for an appropriation sufficient to maintain the program. It is of interest that upon being informed of the cost of fully funding, the Legislature changed the program and did not provide the requested

funds. Appellants fail to recognize a legislative fact of life. Legislatures often provide laudable programs but may fail to fund them adequately or may decline to fund them at all. The decision to create a program as well as whether and to what extent to fund it is strictly a legislative prerogative.

We will not direct the Legislature to act in this regard unless creation of a program and/or the funding thereof is constitutionally mandated. Such is not the case here nor is it claimed to be.

■ Next, appellants contend the Legislature's specific limitation of increased GAN funds to an expenditure of $6,090,000 creates an unconstitutional limitation upon a statutory entitlement created by RCW 74.08.040. Appellants argue that the statutory entitlement to increased GAN funds, said to be required by RCW 74.08.040, may not be limited by an appropriations bill. This, they assert amounts to an unconstitutional amendment of the general law contrary to Const. art. 2, § 19. *Flanders v. Morris,* 88 Wn.2d 183, 558 P.2d 769 (1977) is cited for support. We do not agree.

*Flanders* is not in point. It dealt with an amendment to the public assistance law accomplished by the addition of a *substantive eligibility criteria, i.e.,* an age restriction, in an appropriations bill. As we pointed out, one looking for such a change in the substantive public assistance law would not have looked for it in an appropriations bill. We held the addition of the age restriction was in itself a substantive enactment which did not constitutionally belong in an appropriations bill. Such is not the case here. Section 57(7) makes no substantive change in or amendment of RCW 74.08.040. No eligibility criteria are changed. In fact it does not even change the amount of funding for *basic* GAN grants. Rather, § 57(7) is a specific appropriation of a specific amount of money for a *separate increase* in GAN funds as distinguished from *basically* appropriated GAN funds. The appropriation contained an express prohibition against exceeding the expenditure limitation for *increases.* Where else but in an appropriation bill would one look for

such a limitation? The section reflects only appropriation matters, it does not change the *substantive* law on the subject. The *basic* GAN appropriation was in no way affected. Such budgetary limitations are the function of appropriations bills and clearly within the power of the Legislature.

Far from being required to expend more DSHS funds to continue the increased grant levels, such action by the Secretary would have been *unlawful* in light of § 57(7)'s limitation. RCW 43.88.260, .270, .290, .300. Further, an incurred deficiency, overencumbrance or expenditure of funds contrary to the terms, limits, or conditions of any appropriation made by law could have caused summary removal of the responsible agency head or appointive officer and could have given rise to civil as well as criminal penalties. RCW 43.88.260, .270, .290, .300.

The continued payment of the increased GAN funds (as distinguished from continued payment of the basic GAN compensation) would have been directly contrary to the specific directive of § 57(7). All told it is clear the Legislature in the case of *increased* funds did not desire its direction to be circumvented. Consequently, RCW 74.08.040 provides appellants with no statutory entitlement to *increased* GAN payments beyond those appropriated for that purpose and subject to the specific limitations of the appropriation.

Finally, appellants assert that Administrative Order 1316 which halted payment of *increased* GAN grants after total expenditure of appropriated funds and reinstated the basic grant level, was adopted in violation of notice and hearing requirements of the Administrative Procedures Act. Appellants point out that RCW 34.04 requires both public notice and an opportunity to comment before the adoption of proposed agency regulations. They acknowledge that in exceptional cases (*i.e.,* emergencies) an administrative agency may dispense with prior notice and hearing and immediately adopt a regulation if, pursuant to statutory procedures, the agency finds: the action is "[1] necessary for the preservation of the public health, safety or general

welfare, *and* [2] observance of the requirements of notice and opportunity to present views . . . would be contrary to the public interest . . ." RCW 34.04.030. Appellants contend no emergency existed, or if one did exist it was created by the agency's own ineptness in handling a predictable financial problem.

Whether DSHS violated the Administrative Procedures Act (APA) by failing to hold hearings prior to increasing the GAN grants pursuant to the legislative authorization found in § 57 or whether DSHS violated the APA when it reduced the previously increased GAN payments as required by the § 57 appropriation is not before us. Under the terms of the specific appropriation and the specific limitation on expenditures, a challenge based upon DSHS's failure to follow prior notice and hearing procedures under the APA is not an appropriate remedy.

In the instant situation the APA is not applicable. Notice and hearing prior to discontinuing payment of previously appropriated, but currently exhausted, increased GAN grant funds would have accomplished nothing. The Legislature itself previously had established an *absolute* limitation on increased expenditures for the GAN program. This limit had been reached. Thus pursuant to the Legislature's own directive there was nothing further for DSHS to do but discontinue the increased payments. DSHS could not by rule or by administrative regulation, amend or change the impact of § 57(7). Administrative rules or regulations may not amend or change legislative enactments. *Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 815, 467 P.2d 312 (1970). Further, as provided by RCW 34.04.940:

> *Nothing in the Administrative Procedure Act shall be held to . . . limit* or repeal additional *requirements imposed by statute* or otherwise recognized by law.

(Italics ours.)

Appellants argue that an administrative hearing at least would have made it known that funds were available from alternate sources such as (1) transfer from other DSHS

programs, (2) the Governor's emergency funds, (3) through a call for a special session of the Legislature. However, these are not viable alternatives to the specific directive of § 57(7). As explained above, transfers from other DSHS programs pursuant to the general authorization of § 51(7) would have been in direct violation of the specific limitations and conditions of § 57(7). Further, the use of money obtained from the Governor's emergency funds would have been subject to the same limitation plus the discretion of the Governor which is not subject to the directive of any administrative agency. Finally, whether an extraordinary session of the Legislature may be called is solely a prerogative of the Governor and is not subject to order of the judiciary, the Legislature or any administrative body.

Consequently, we hold there is no need to determine whether DSHS failed to follow the APA in adopting Administrative Order 1316. Further, we need not decide whether, under the APA, there was such an emergency as would call into play the emergency exception set forth in RCW 34.04.030. The APA is not applicable to a situation involving the funding of programs where: (1) the program is an exclusively state–funded and state–administered program and no federal funds or federal administrative rules are involved; (2) the Legislature previously had enacted an express absolute limitation on expenditures for the program; and (3) previously determined conditions and limitations on expenditures have been reached and the funds have been totally expended.

Whether § 57(7) should be amended to authorize the use of funds from other sources and whether additional funds should be appropriated for increased GAN grants are decisions which only the Legislature can make, there being no constitutional mandate to the contrary. Further, whether an extraordinary session of the Legislature should have been called to consider the instant matter was a matter strictly within the discretion of the Governor, there being no constitutional mandate to the contrary.

■ We affirm the trial court except insofar as it concluded that Administrative Order 1316 was validly adopted in accordance with the requirements of RCW 34.04.030. As explained above, the APA is not applicable to the instant case and thus the conclusion of law was inappropriate. Nevertheless, the ultimate resolution of the total issue before the court is correct. Where a judgment or order is correct it will not be reversed merely because the trial court gave wrong or insufficient reason for its rendition. *Cheney v. Mountlake Terrace,* 87 Wn.2d 338, 347, 552 P.2d 184 (1976); *Retail Clerks Local 629 v. Christiansen,* 67 Wn.2d 29, 31, 406 P.2d 327 (1965); *Kirkpatrick v. Department of Labor & Indus.,* 48 Wn.2d 51, 53, 290 P.2d 979 (1955).

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied March 14, 1979.