[No. 57948-2.   En Banc.   March 26, 1992.]

THE CITY OF ELLENSBURG, *Respondent*, v. THE STATE OF WASHINGTON, ET AL, *Appellants*.

Kenneth O. Eikenberry, Attorney General, James M. Johnson, Senior Assistant, and John J. Ryan and Carole A. Ressler, Assistants, for appellants.

Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Albert R. Malanca, Donald S. Cohen, and Kenneth G. Kieffer; Glenna Bradley-House, City Attorney, for respondent.

BRACHTENBACH, J. — The City of Ellensburg (City) furnishes fire protection services to Central Washington University (CWU) which is located within the city. The State, acting through the Department of Community Development (DCD), and pursuant to RCW 35.21.775, contracts with the City to pay its proportional share of appropriated funds for fire protection services. That share is determined by the formula in WAC 365-80.

The City's cost of furnishing fire protection services to CWU is substantially greater than the amount paid by the State. The City sued the State, both houses of the State Legislature, the DCD, the Office of Financial Management (OFM), and CWU.

The trial court granted summary judgment in favor of the City, determining in effect that the State had a statutory obligation to fully fund the fire protection services. The trial court ordered that all defendants, on behalf of the State, "shall take all necessary steps to implement the funding" of fire protection contracts. Judgment and Order, at 4. Further, the trial court ordered that "[i]f there is a failure to pay the contract in any year, a cause of action against

defendants shall accrue in each such year for such failure to pay the contract, which may be submitted to this court for prompt enforcement." Judgment and Order, at 4.

A nonjury trial was held to determine the necessary level and actual cost of fire protection provided to CWU. The trial court created a formula to determine the mandatory state contribution. Conclusion of law 10. For past services, judgment of $1,100,180 was entered against all defendants, jointly and severally. Judgment and Order, at 2. We reverse.

The decisive question is whether RCW 35.21.775 requires the State to pay the actual cost of fire protection services which are provided by a city or town to property and personnel therein owned by the State or an agency or institution of the State.[1] In other words, does the Legislature decide how much to appropriate for payment to the 93 cities and towns which are eligible for payment under the statute, or does the statute mandate appropriation of the entire amount of the cost of fire protection services in all of the 93 cities and towns?

The DCD now allocates the amount appropriated among the municipalities pursuant to WAC 365-80-050. It simply divides the amount appropriated by total square footage of state facilities as defined in WAC 365-80-030 and multiplies by the square footage of state facilities in a particular municipality. Clearly, the amount appropriated by the Legislature has been substantially less than the actual cost for municipalities to provide fire protection services. If the State must appropriate sufficient funds to cover actual costs, the appropriation would be determined by negotiated contracts between the DCD and the 93 municipalities, or failing that, presumably by a formula devised by the courts. Once the total costs were determined, the Legislature would have to appropriate that amount.

---

[1] If the statute created a mandatory duty of full funding, there are other issues presented. Those issues need not be addressed because of our holding on funding except as to the validity of WAC 365-80.

The governing statute is RCW 35.21.775, originally enacted by Laws of 1979, 1st Ex. Sess., ch. 102, § 1, which currently states:

> Whenever a city or town has located within its territorial limits buildings or equipment, except those leased to a nontax-exempt person or organization, owned by the state or an agency or institution of the state, the state or agency or institution shall contract with the city or town for fire protection services necessary for the protection and safety of personnel and property pursuant to chapter 39.34 RCW, as now or hereafter amended. Nothing in this section shall be construed to require the state, or any state agency or institution, to contract for services which are performed by the staff and equipment of such an entity or by a fire protection district pursuant to RCW 52.30.020. The director of community development shall present in the budget submitted to the governor for each biennium, an amount sufficient to fund any fire protection service contracts negotiated under the provisions of this section.

Through amendments the administering agency was changed from the Department of General Administration to the DCD. Laws of 1983, ch. 146, § 1; Laws of 1985, ch. 6, § 4.

Based on the following analysis we conclude that the statute does not mandate what we shall call "full funding".

Preliminarily we note that there could be some argument about what level of funding is required, were it mandatory. The City characterizes as funding "to the extent 'necessary' or essential". Brief of Respondent, at 13. Because of our holding we need make no determination of what level of funding would be necessary and, for convenience, shall refer to "full funding", recognizing the term is not definitive.

RCW 35.21.775 places two duties upon the State: (1) "the state or agency or institution shall contract with the city or town for fire protection services necessary for the protection and safety of personnel and property", and (2) the DCD "shall present in the budget submitted to the governor for each biennium, an amount sufficient to fund any fire protection service contracts negotiated under the provisions of this section."

■ Under the statute, the State's first duty is to contract for such fire protection services as are necessary to protect its personnel and property (we refer to the State as including its agencies and institutions). That part of the statute is entirely silent as to payment to the municipality. The word "necessary" is of no help because it refers to a level of fire protection, not to the amount necessary to pay for it.

The second duty under the statute requires the Director of the DCD to submit to the Governor as part of the agency's budget request an amount sufficient to fund the amounts for which DCD has contracted. Again, this does not add anything to the question of the level of funding. That is, the DCD must request for inclusion in the Governor's proposed budget the amount contracted for, but there remains the underlying question whether it must contract for full funding payment. The fact that the DCD must make such request for inclusion within the Governor's proposed budget, RCW 43.88, does not determine what that amount should be, other than the aggregate amount of the contracts.

■ Other pertinent statutes support our holding. We read them together as an aid to the interpretation of RCW 35.21.775. "[S]tatutes must be read together to determine legislative purpose to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *Employco Personnel Servs., Inc. v. Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991).

RCW 35.21.777 states that nothing in RCW 35.21.775 shall prohibit a separate contract between the State and a city "if by mutual agreement a city or town and a state agency find that the funding under RCW 35.21.775 is inadequate to compensate the city or town for fire protection services or equipment provided to state facilities."

If RCW 35.21.775 mandated full funding of fire protection services, RCW 35.21.777 would be superfluous, at least in part. If mandatory full funding is the intent of RCW 35.21.775, as the City contends, why would it be necessary

to authorize an additional contract if the parties *mutually* agree that funding under RCW 35.21.775 is inadequate? It would not be necessary. One statute should not be read so as to render another pertinent statute superfluous. *Employco*, at 614; *Stone v. Chelan Cy. Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988) (statutes should not be construed so as to render any portion meaningless or superfluous). We are not persuaded by the City's argument that RCW 35.21.777 is intended to permit contracts "above and beyond what is essential". (Italics omitted.) Brief of Respondent, at 11.

RCW 28B.35.190 is relevant. It empowers the trustees of the regional universities, such as CWU (RCW 28B.35.010) to contract for fire protection services. However, the proviso states that neither the failure of the trustees to so contract pursuant to this section "nor anything herein shall detract from the lawful and existing powers and duties of political subdivisions of the state to provide the necessary fire protection equipment and services to persons and property within their jurisdiction." RCW 28B.35.190.

Thus, the Legislature recognizes a duty upon the municipality to provide fire protection services even without a contract for any reimbursement of costs, full or otherwise.

Our interpretation also rests solidly upon the principles enunciated in *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979). There, the court considered funding for an identifiable class of public assistance recipients. The pertinent statute required standards of public assistance "compatible with a minimum necessary for decent and healthful subsistence." Former RCW 74.08.040; *Pannell*, at 595. The recipients claimed a statutory entitlement from the quoted language. The Legislature's appropriation provided that not more than a specific sum could be expended to meet the added costs of increases needed to meet the statutory criteria.

The *Pannell* court held that the recipients were not entitled to payments beyond those funds appropriated even though depletion of the appropriation prevented compliance

with the standards of assistance mandated by the Legislature. *Pannell*, at 600. Similarly, here the Legislature directed the DCD to contract for fire protection services necessary for the protection and safety of personnel and property of CWU. That is analogous to the *Pannell* requirement of assistance "compatible with a minimum necessary for decent and healthful subsistence." (Italics omitted.) *Pannell*, at 595. The subsistence in *Pannell* did not meet that minimum. The reimbursement here does not meet the City's cost of services necessary to provide for protection and safety.

■ A principle stated in *Pannell* is accurate, relevant and controlling:

> Appellants [recipients] fail to recognize a legislative fact of life. Legislatures often provide laudable programs but may fail to fund them adequately or may decline to fund them at all. The decision to create a program as well as whether and to what extent to fund it is strictly a legislative prerogative.
>
> We will not direct the Legislature to act in this regard unless creation of a program and/or the funding thereof is constitutionally mandated.

*Pannell*, at 599.

The City attempts to distinguish *Pannell* on three grounds. Brief of Respondent, at 13-19. None succeeds. First, the City argues that the legislation in *Pannell* differs because it only required establishment of standards of assistance while RCW 35.21.775 created a mandatory obligation. Of course, that is the question — did it create mandatory funding — not the answer. In *Pannell* the agency was directed to disburse appropriated funds necessary to meet a minimum standard. It could not do so when appropriated funds were inadequate to meet the mandated minimum. Here, in contrast, the agency is directed to contract for a certain level of fire protection. However, the agency was not directed to contract to pay the City the amount necessary to provide the necessary services. The offered distinction does not dispel the force of the *Pannell* rationale.

The City next argues the *Pannell* legislation is different and the holding inapplicable because the appropriation contained a specific maximum amount of funding. *Pannell* does rely on the specific funding limit in declining to order the Legislature to appropriate moneys in excess of the limitation. *Pannell*, at 597, 600-01. But that is of no assistance to the City. The statute here never mentions funding in any amount, much less an amount necessary to fully fund the City's costs. Indeed, the statute only requires the DCD to submit to the Governor, for the Governor's budget request, the amount for which it has contracted historically, not the amount required for full funding.

After judgment in this case, the Legislature appropriated only $500,000 as the state general fund appropriation for *all* fire protection contracts. Laws of 1991, 1st Sp. Sess., ch. 16, § 220(14).

■ The City's third argument for rejection of the *Pannell* holding here is based on the statement that the court will not direct the Legislature to make an appropriation "unless creation of a program and/or the funding thereof is constitutionally mandated." *Pannell*, at 599. The City states: "In Washington, fire protection is within the sphere of public protection provided in the Constitution." Brief of Respondent, at 18. It cites *Hass v. Kirkland*, 78 Wn.2d 929, 481 P.2d 9 (1971). *Hass* does not support the City's assertion that fire protection services are *constitutionally* mandated.

In *Hass*, the plaintiff sought mandamus to compel issuance of a building permit for a building which would have violated a city's fire protection code. *Hass* held that Const. art. 11, § 11 delegated to the City the police power to enact the fire code which justified denial of the permit. Clearly, the case does not even suggest that the constitution imposed a mandatory duty on municipalities to provide fire protection services, nor does it suggest, much less command, that the State fully fund such municipal services.

The City cites no part of the constitution in support of its argument, except as Const. art. 11, § 11 is involved in *Hass*. The City cites *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476,

585 P.2d 71 (1978). The City provides no analysis of why that case supports its claim of a constitutional mandate, perhaps because that case is no support for its position. *Seattle Sch. Dist. 1* involved the unique command of Const. art. 9, § 1; it is not relevant here. Thus, we conclude that the "constitutional" exception mentioned in *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979) does not exist in this case.

Legislative action is consistent with our holding. There is some persuasion from what it has or has not done. RCW 35.21.775 was enacted in 1979. Laws of 1979, 1st Ex. Sess., ch. 102, § 1. No funds were appropriated until 1981. In each biennium since 1985, DCD has requested an increase in fire protection appropriations; yet the Legislature has appropriated less money than requested. In 1987, a bill was introduced which would have appropriated specific amounts to certain cities, including Ellensburg, but it did not pass. House Bill 1010, 50th Legislature (1987); First Substitute House Bill 1010, 50th Legislature (1988). At the least, the House Local Government Committee was aware of less than full funding. A 1983 Local Government Fiscal Note states:

> The cities . . . providing fire protection services under contracts with the Department of General Administration [now DCD] find that the current state payment does not approach the costs of providing those services. It is generally estimated that the state contracts cover one-fourth of the costs of providing fire protection services to state buildings and properties.

House Comm. on Local Gov't, House Bill 35, 48th Legislature (1983) Fiscal Note.

Consequently the court erred in (1) granting a monetary judgment for past fire protection services, and (2) ordering future full funding according to the formula devised by the court.

■ Our holding is consistent with Const. art. 8, § 4: "No moneys shall ever be paid out of the treasury of this state . . . except in pursuance of an appropriation by law . . .." It is consistent also with RCW 43.88.130: "No agency shall

expend or contract to expend any money or incur any liability in excess of the amounts appropriated for that purpose . . .." The power of appropriation is vested in the Legislature. It is the rare case where the judiciary interferes with that power. *See, e.g., In re Juvenile Director*, 87 Wn.2d 232, 552 P.2d 163 (1976); *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978). This is not one of those rare cases.

Finally, it is necessary to consider the regulations adopted by the DCD, WAC 365-80, particularly WAC 365-80-050 which is the formula for distribution of the funds appropriated pursuant to RCW 35.21.775. The trial court created its own formula for distribution of fully funding appropriations. Conclusion of law 10. Presumably this method was to replace WAC 365-80-050.

The trial court's creation of a formula necessarily rejected WAC 365-80-050. However, this action was based on the erroneous conclusion that the statute mandated full funding; the trial court's formula has no validity independent of that erroneous holding. Therefore, WAC 365-80 remains unaffected by these proceedings.

The judgment is reversed and the action dismissed.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.