[No. 61776-7.   En Banc.   July 6, 1995.]

MARGARET J. LEONARD, *Respondent*, v. THE CITY OF
SPOKANE, *Appellant*.

*Perkins, Coie,* by *Thomas F. Kingen, Roy J. Koegen* and *Susan D. Miller, Perkins, Coie,* for appellant.

*Stephen K. Eugster,* for respondent Leonard.

*Jim Sweetser, Spokane County Prosecutor, Garald A. Gesinger, Deputy,* for respondent Spokane County.

*Karr, Tuttle & Campbell, Lawrence B. Ranson,* and *Susan K. Schreurs,* on behalf of Washington Counsel of School Attorneys, amici curiae.

*Hugh D. Spitzer,* on behalf of Greater Seattle Chamber of Commerce, amicus curiae.

*Preston, Gates & Ellis, Elizabeth Thomas, Larry M. Carter,* and *Jay A. Reich,* on behalf of City of Yakima, amici curiae.

*Preston, Gates & Ellis, Elizabeth Thomas, Larry M. Carter,* and *Jay A. Reich,* on behalf of Association of Washington Cities, amici curiae.

*Stoel, Rives, Boley, Jones, & Grey, William C. Severson,* on behalf of Pemco Insurance Company, Washington Education Association and Seattle Community Council Federation, amici curiae.

DOLLIVER, J. — The City of Spokane seeks reversal of a trial court decision ruling that the Community Redevelopment Financing Act of 1982 (RCW 39.88) violates the Washington State Constitution.

In an effort to stimulate economic development in decay-

ing urban areas, the Legislature enacted the Community Redevelopment Financing Act of 1982 (Act). The Act endeavors to accomplish the Legislature's objective by encouraging cities to construct public improvements, which, it is believed, will spawn private investment and job growth.

The Act authorizes a city to issue bonds to finance public improvements. To repay its bondholders, the city is permitted to draw upon regular property tax revenue collected from property owners inside a zone, known as an apportionment district, surrounding the site of the public improvements. The city has limited discretion to demarcate the boundaries of that zone. Not all regular property tax revenue collected from apportionment district property owners, however, is available for bond repayment. Only tax revenue generated by the increase in apportionment district property values spurred by the public improvements is available for this purpose.

At the same time that the Act was enacted, the Legislature adopted Senate Joint Resolution (SJR) 143, 47th Legislature (1982), a proposed constitutional amendment which expressly authorized the financing scheme described in the Act. The voters rejected SJR 143 in the November 1982 state general election. Three years later, the Legislature passed House Joint Resolution (HJR) 23, 49th Legislature (1985), a proposed constitutional amendment with the same function as SJR 143, and placed it on the ballot. It was also defeated at the polls.

In January 1993, the legislative body of the City of Spokane (City), the City Council, approved a plan to redevelop the area surrounding Bernard Street in downtown Spokane. At that time, the Council also decided that the financing scheme available under the Act would be employed to fund the public improvements that were part of that redevelopment plan. Over the course of the following nine months, the Council adopted three ordinances, Spokane City Ordinance C30736, C30840, and C30935, implementing such a financing scheme.

An apportionment district was created by ordinance C30736. It comprised a seven-square-block area, enclosed by Spokane Falls Boulevard on the north, Washington Street on the west, Browne Street on the east, and both Sprague and 1st Streets on the south. The improvements envisioned by the ordinances included curbs, gutters, storm drainage, sidewalks, embossed concrete, signalization, street lighting, street trees, and an irrigation system. The estimated cost was $850,000.

Ordinance C30840, as amended by ordinance C30935, authorized the City to issue two types of bonds to pay for the improvements: tax allocation bonds, which were to be repaid with tax revenue ultimately generated by the improvements, and limited tax general obligation bonds, which were to be repaid with general tax revenue. That ordinance also required all tax revenue generated by the improvements to be held in a special fund.

In July 1993, Margaret J. Leonard (Leonard), a property owner in the apportionment district created by ordinance C30736, filed a declaratory action against the City, requesting the court to declare either that the Act is unconstitutional, or, in the alternative, that the aforementioned ordinances violate both the Act and the Spokane City Charter. In September 1993, Spokane County moved to intervene in Leonard's lawsuit to argue against the constitutionality of the Act. The trial court granted that motion. In December 1993, the City moved for summary judgment. Subsequently, Leonard made a cross-motion for partial summary judgment. The trial court granted Leonard's motion, holding the Act unconstitutional and the ordinances adopted pursuant to it therefore invalid. The City subsequently requested this court to review that decision. We accepted review.

## I

"[A] statute is presumed to be constitutional, and the challenging party has the burden of establishing beyond a reasonable doubt that the statute is unconstitu-

tional". *Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 253, 804 P.2d 1241 (1991); *see also Higher Educ. Facilities Auth. v. Gardner*, 103 Wn.2d 838, 843, 699 P.2d 1240 (1985). Leonard submits that this principle is not applicable in the present case. Rather, maintains Leonard, the Act is presumptively unconstitutional and must be proved constitutional beyond a reasonable doubt by the City. We disagree.

The rationale for the presumption of constitutionality is no less compelling in the instant case than in any other case involving a constitutional challenge to a statute. In *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 642-43, 771 P.2d 260 (1989), we stated that:

> In matters of economic legislation, we follow the rule giving every reasonable presumption in favor of the constitutionality of the law or ordinance. We employ this caution to avoid substituting our judgment for the judgment of the Legislature.

(Citation omitted.)

The two proposed constitutional amendments, SJR 143 and HJR 23, expressly authorized the use of a financing scheme of the type embodied in the Act. Therefore, Leonard argues, the voters recognized the unconstitutionality of the Act when they rejected these amendments first in 1982 and again in 1985. This argument is unfounded. This court, not the electorate, is invested with the power to decide the constitutional fate of a legislative enactment. We have definitively stated that "[t]he ultimate power to interpret, construe and enforce the constitution of this State belongs to the judiciary". *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 496, 585 P.2d 71 (1978).

## II

The trial court held the Act unconstitutional, finding it violative of article IX, section 2, of the Washington State Constitution. That constitutional section provides:

> The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal

schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools.

At Leonard's urging, the trial court concluded that the Act diverts tax dollars from common schools to public improvements. We agree.

Under RCW 84.52.065, school taxes must be levied on all real property every year. Significantly, the statute does not impose a dollar ceiling on the assessed real property value subject to such taxes. Therefore, under RCW 84.52.065 the entire assessed value of a parcel of real property is subject to school taxes.

Under the Act, a portion of the regular property taxes collected from apportionment district property owners is allocated to the regular tax authority administering the district, and a portion is allocated to the sponsor of the public improvement. The portion to be allocated to the sponsor, designated "tax allocation revenue", is calculated in accordance with a formula set forth in RCW 39.88.070. Pursuant to that formula, tax allocation revenue is equal to all property taxes generated by the difference between the assessed value of a parcel of real property in the year the apportionment district was created and the assessed value of that property in the current year. *See* RCW 39.88.070(1)(b).

In the absence of RCW 39.88.070, this differential in assessed property value would be subject to school taxes pursuant to RCW 84.52.065. Therefore, RCW 39.88.070 effectively exempts the differential from school taxes, and thereby diverts taxes to public improvements and away from the common schools in violation of article IX, section 2 of the state constitution.

The City contests this conclusion, arguing that in the absence of the Act the tax dollars allegedly diverted would not have been generated. In effect, the City is arguing that additional tax revenue generated by enhanced private property values need not be used for the common schools

because the increase in property value generating them was induced by a legislative act. We do not find this argument persuasive. Would the City suggest that additional tax revenue generated by enhanced property values resulting from, for example, inflation, need not be used for the common schools? Surely not. There is no plausible reason to distinguish between additional tax revenue generated by legislatively induced enhanced property values and additional tax revenue generated by nonlegislatively induced enhanced property values.

The City also contends that even if RCW 39.88.070 diverts taxes away from the common schools in contravention of RCW 84.52.065, it does so deliberately in an attempt to modify that statute. RCW 39.88.070, the City points out, was adopted by the Legislature after RCW 84.52.065. This point, however, is irrelevant in light of the fact that the two statutes do not deal with the same subject matter. While RCW 39.88.070 addresses the financing of public improvements, RCW 84.52.065 addresses school taxes. One statute modifies another "*only* if the two statutes deal with the same subject matter and they have an apparent conflict". *Tacoma v. Taxpayers*, 108 Wn.2d 679, 690, 743 P.2d 793 (1987); *see also Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 425, 799 P.2d 235 (1990).

The Kentucky Supreme Court found a financing scheme very similar to that contained in the Act to be violative of Kentucky's constitutional provision regarding funding of public schools. In *Miller v. Covington Dev. Auth.*, 539 S.W.2d 1, 5 (Ky. 1976), that court stated:

Const. § 184 has always been construed as meaning that money collected for the purposes of education in the common school system cannot be spent for any other purpose, public or not. It is no answer to say that the tax increments will be money the schools would not have had anyway, because the fact is that neither could this portion of the tax increments ever be realized except through taxes levied for and in the name of the common schools. It is also irrelevant, we think, that as a practical matter tax increment financing eventually will increase the revenues of a school district by enhancing

its tax base, or that the redevelopment of depressed areas may increase the average levels of student achievement by improving the environment in which the students live. The stubborn fact remains that school taxes can be raised only for school purposes, and there is neither jot nor tittle in either of these two legislative acts, singly or together, that suggests the improvement of schools or the improvement of education as being among its objectives. . . . If tax increment financing under these acts will confer any benefit on the school districts involved, it is purely incidental, fortuitous, far in the future, and at this point speculative. . . .

(Citations omitted.) The City attempts to distinguish *Miller* from the present case by pointing out that the legislation that it examines expressly permits a city to finance public improvements with funds earmarked for schools. *Miller*, at 3. The Act does the same, although it does so impliedly rather than expressly. The distinction between an express and an implied diversion of school funds is irrelevant.

■ It must be noted that only a portion of the Act, RCW 39.88.070, runs afoul of article IX, section 2 of the state constitution. The Act provides:

If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

RCW 39.88.915. However, the various provisions of a legislative enactment are not severable if

the constitutional and unconstitutional provisions are so connected—that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature.

*Hall v. Niemer*, 97 Wn.2d 574, 582, 649 P.2d 98 (1982) (quoting *State ex rel. King County v. State Tax Comm'n*, 174 Wash. 336, 339-40, 24 P.2d 1094 (1933)). Applying this test, we believe that RCW 39.88.070 is not severable from the remainder of the Act. As the Act's funding mecha-

nism, it represents the heart and soul of the Act. This being so, the Act would be virtually worthless without it.

Leonard argues that the Act violates a host of other provisions of the Washington State Constitution. However, we will not entertain those arguments because we have concluded that article IX, section 2 of the constitution provides a sufficient ground for holding the Act unconstitutional.

Furthermore, in light of our holding the ordinances enacted by the City pursuant to the Act are rendered invalid. Accordingly, the issues raised by Leonard relating to those ordinances need not be addressed.

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, TALMADGE, and PEKELIS, JJ., concur.