[No. 20428-2-II. Division Two. July 31, 1998.]

DEANNA L. JOHANSON, ET AL., *Respondents*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

738

740

*Christine O. Gregoire, Attorney General,* and *Mitchel R. Sachs, Assistant,* for appellant.

*Edward E. Younglove III* of *Swanson, Parr, Cordes, Younglove & Peeples,* for respondents.

HOUGHTON, C.J. — The Department of Social and Health Services (DSHS) appeals from the trial court's ruling that its decision to close a treatment facility for fiscal reasons was not a valid basis for impairing a collective bargaining agreement between the State and the Washington Federation of State Employees (WFSE). We affirm.

## FACTS

*Summary of Findings of Fact*

The trial court's findings of fact are verities on appeal and are summarized as follows.[1] Deanna Johanson worked as a psychiatric counselor in the PORTAL program at the Northern State Multi-service Center (Northern State). The PORTAL program was a state-run, long-term residential treatment center for voluntarily committed, chronic mentally ill patients. Many of the patients were chemically addicted. Although the PORTAL program included some chemical dependence treatment, its primary focus was on mental illness.

The 1993 Legislature directed DSHS to establish "a consolidated, privately operated program specializing in the involuntary treatment of chemically dependent clients, and the voluntary treatment of mentally ill chemical abusers" at Northern State. DSHS was also directed to phase out the PORTAL program. Layoff notices were sent to the PORTAL civil service staff.

WFSE is the exclusive bargaining representative for the Institutions Bargaining Unit of DSHS, of which the former PORTAL employees were members. The collective bargaining agreement between DSHS and WFSE set forth that:

---

[1]*Moreman v. Butcher,* 126 Wn.2d 36, 891 P.2d 725 (1995) (Unchallenged findings of fact are verities on appeal.).

## Article XII: CONTRACTING OUT

Management retains those rights based upon law or State rules and regulations to contract and sub-contract work. Management will not, however, contract or sub-contract work when such action will cause the elimination of classified positions or preclude the performance of work typically and historically accomplished by civil service personnel within the institution.

It is further agreed that Management shall not contract or sub-contract work for new programs or expansion of existing programs for regular and ongoing work that is typically and traditionally accomplished by civil service personnel.

Although the PORTAL facility was not certified as for mentally ill, chemical abusing patients when the Legislature directed closure in 1993, PORTAL had sought certification at this time and lacked only the required certified chemical dependency counselors. The Director of the Washington State Department of Personnel could have authorized PORTAL to recruit outside the merit system for employees who met the certification requirements. Or the state could have provided funds to train and certify PORTAL employees. In either circumstance, the WFSE contract would not have been impaired. Instead, the state closed PORTAL and privately contracted for the treatment of the voluntarily committed, mentally ill chemical abusers at Northern State.

The Pioneer Program, which was located with PORTAL on the Northern State grounds, was an independent, privately owned program for involuntary treatment of chemically dependent individuals. Apparently, there was a dispute about the extent to which persons in the PORTAL and Pioneer programs were referred to the other program. After the Legislature directed phase out of the PORTAL program, Pioneer successfully bid for the newly established program.

Johanson appealed her layoff by reduction in force to the Personnel Appeals Board. That Board dismissed her appeal

on grounds that it did not have the jurisdiction to hear appeals based upon a constitutional challenge to a legislative act.

*Summary of Conclusions of Law*

The trial court entered conclusions of law determining that, although the collective bargaining agreement reserves DSHS's right to privately contract for work, if required by state law, the contract also prohibits private contracting if its effect is the elimination of classified positions under the state civil service system. The trial court further concluded that: (1) the legislation substantially impaired the contractual relationship between the parties because it eliminated all classified positions at the PORTAL program; (2) the Legislature's decision to close the PORTAL facility, because it was not certified to treat mentally ill, chemical abusers, was for fiscal reasons; and (3) fiscal reasoning was not a valid basis for legitimately impairing the collective bargaining agreement and the Legislature's directive to close the PORTAL facility and privately contracting for a mentally ill, chemical abuser program, unconstitutionally impaired the collective bargaining agreement.

The trial court then ordered that Johanson and other civil service employees laid off by the reduction in force at PORTAL be reinstated. DSHS appealed and this court entered a stay on appeal of the trial court's ruling.

## ANALYSIS

*Fiscal Basis*

DSHS first contends that under WAC 356-30-330(1),[2] an agency is authorized to lay off employees for a lack of funds. DSHS further asserts that under LAWS OF 1993, 1st Spec.

---

[2]Pursuant to WAC 356-30-330:

(1) Employees may be separated in accordance with the statutes and the agencies' approved reduction in force procedures after at least fifteen calendar days' notice in writing, without prejudice, because of lack of funds or curtailment of work, or good faith reorganization for efficiency purposes . . . ."

Sess., ch. 24, § 204(2)(b),(c), the PORTAL program was eliminated due to lack of funding, therefore causing DSHS to lawfully reduce Johanson's position. But DSHS's argument begs the question whether § 204(2)(b) and (c)[3] unconstitutionally impaired the collective bargaining agreement between Johanson and DSHS.

■■■ Under article I, section 10 of the U.S. CONSTITUTION[4] and article I, section 23 of the WASHINGTON STATE CONSTITUTION,[5] "any form of legislative action" that impairs the obligations of contracts is presumed unconstitutional. *Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 560, 901 P.2d 1028 (1995) (quoting *Ruano v. Spellman*, 81 Wn.2d 820, 825, 505 P.2d 447 (1973)). A collective bargaining agreement is a contract protected by article I, section 23. *Carlstrom v. State*, 103 Wn.2d 391, 394, 694 P.2d 1 (1985).

The prohibition against any impairment of contracts "is not an absolute one and is not to be read with literal exactness." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 78 L. Ed. 413, 54 S. Ct. 231 [, 236], 88 A.L.R. 1481 (1934). But when a state interferes with its own contracts, those impairments "face more stringent examination under the Contract Clause than would laws regulating contractual relationships

---

[3]LAWS OF 1993, 1st Spec. Sess., ch. 24, § 204(2):

(b) From appropriations provided in this section and in § 208 of this act, the secretary of social and health services shall establish a consolidated, privately-operated program specializing in the involuntary treatment of chemically dependent clients, and the voluntary treatment of mentally ill chemical abusers, on the grounds of the northern state multi-service center. In establishing this consolidated program with discrete treatment components, the secretary shall involve mental health and chemical dependency treatment providers, advocacy groups, and local system administrators in designing the program, developing its admission and discharge procedures, and selecting and monitoring the contractor.

(c) The secretary of social and health services shall phase out operation of the PORTAL program at the northern state multi-service center . . . .

[4]"[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. CONST., art. I, § 10.

[5]"No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." WASH. STATE CONST. art. I, § 23.

between private parties." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 n.15, 57 L. Ed. 2d 727, 98 S. Ct. 2716 [, 2722 n. 15] (1978). *Accord Caritas Servs., Inc. v. Department of Soc. & Health Servs.*, 123 Wn.2d 391, 402-03, 869 P.2d 28 (1994) . . . .

This court uses a 3-part test to determine if there has been an impairment of public contract: (1) does a contractual relationship exist, (2) does the legislation substantially impair the contractual relationship, and (3) if there is a substantial impairment, is it reasonable and necessary to serve a legitimate public purpose. *Caritas*, 123 Wn.2d at 403; *Carlstrom* [], 103 Wn.2d 391 [].

*Washington Fed'n of State Employees*, 127 Wn.2d at 560-61 (quoting *Tyrpak v. Daniels*, 124 Wn.2d 146, 151-52, 874 P.2d 1374 (1994)).

■ Both parties concede that there was a contract between DSHS and the PORTAL employees. Moreover, no one strongly asserts that the loss of employment was not detrimental to the contractual rights of the employees.[6] *Tyrpak*, 124 Wn.2d at 153 (diminution in value of a public contract, caused by the government, constitutes an impairment); *Caritas Servs., Inc. v. Department of Soc. & Health Servs.*, 123 Wn.2d 391, 404, 869 P.2d 18 (1994) (application of a statute to a public contract that relieves the State

---

[6]Legislative action that detrimentally affects public employment contracts was examined in the following cases. *Washington Fed'n of State Employees v. Joint Ctr. for Higher Educ.*, 86 Wn. App. 1, 8, 933 P.2d 1080 (1997) (Center impaired the contract when it contracted out for custodial services to replace civil service employees who traditionally performed the work); *Joint Crafts Council v. King County*, 76 Wn. App. 18, 21, 881 P.2d 1059 (1994) (privatization of repair and maintenance of police vehicles did not impair contract when performance of work by civil servants was impracticable and where cost savings was not a basis for the decision); *Keeton v. Department of Soc. & Health Servs.*, 34 Wn. App. 353, 358-59, 661 P.2d 982, *review denied*, 99 Wn.2d 1022 (1983) (elimination of the bakery department and purchasing baked goods from outside sources did not violate the collective bargaining agreement because DSHS did not "contract out" the services but eliminated jobs due to curtailment of work); *Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 704-05, 585 P.2d 474 (1978) (contracting out for custodial services for a new building was in derogation of the civil servant's express and implied rights to perform work historically provided by the civil servant).

from performing its financial obligation, impairs the contract); *Carlstrom*, 103 Wn.2d at 395-97 (deferring salary increase based upon economic emergency was a substantial impairment of the contract when the State was aware of its financial problems while negotiating the employment contract making the change one in degree not in kind.).

■ Thus, the relevant question is whether the substantial impairment was reasonable and necessary to a legitimate public purpose. *Id.* at 396. "This prong of the impairment test calls for two broad and interrelated inquiries: (1) can a legitimate public purpose for the legislation be identified? and, if so, (2) is the legislation reasonable and necessary to achieve that public purpose?" *Tyrpak*, 124 Wn.2d at 156. In determining whether impairment of the contract was both reasonable and necessary, the court engages in an independent analysis of whether the legislative purpose could have been achieved by less drastic measures. *Carlstrom*, 103 Wn.2d at 396.

■■ The exercise of the State's police power to protect the health, safety, and welfare of the public is a legitimate public purpose; however, purely financial obligations do not necessarily come within the ambit of the police powers. *Caritas*, 123 Wn.2d at 413. In *Carlstrom*, the State Legislature canceled contractual salary increases of the teacher's union due to an economic emergency. The Court held that "although limitation of public spending is a legitimate state goal, 'its weight is diminished in contract clause analysis when the state limits its own previous financial commitments.'" *Carlstrom*, 103 Wn.2d at 396 (quoting *Continental Ill. Nat'l Bank & Trust Co. v. State of Wash.*, 696 F.2d 692, 701 (9th Cir. 1983)); *Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 585 P.2d 474 (1978) (college had no authority to contract out services regularly and historically provided by staff where sole purpose was cost savings).

■ Washington courts have held that a statutory grant of power to state agencies to privately contract for outside services does not create the authority to procure outside services that are ordinarily provided and that could be

provided by civil servants. *Washington Fed'n of State Employees v. Joint Ctr. for Higher Educ.*, 86 Wn. App. 1, 933 P.2d 1080 (1997) (Center for Higher Education did not have statutory authority to contract privately for janitorial services traditionally performed by civil services employees). *But cf. Joint Crafts Council v. King County*, 76 Wn. App. 18, 881 P.2d 1059 (1994) (no violation of civil service rules where decision to use private entities not based upon savings, but impracticality); *Keeton v. Department of Soc. & Health Servs.*, 34 Wn. App. 353, 661 P.2d 982, *review denied*, 99 Wn.2d 1022 (1983) (termination of two bakers motivated by curtailment of work, lack of funds, and good faith reorganization).

DSHS contends that its contract with the WFSE enabled it to contract or subcontract work for new programs. It notes that the PORTAL program was designed to provide long-term care and treatment to individuals with major mental disorders on a voluntary basis, unlike the Pioneer program that operated independently and dealt with involuntary treatment of chemical-addicted individuals.

Moreover, DSHS notes that the Legislature directed DSHS to contract for a consolidated privately operated program specializing in the involuntary treatment of chemically addicted and voluntary treatment of mentally ill, chemical abuser individuals. DSHS also asserts that the new mentally ill, chemical abuser program, a hybrid of both mental health and chemical abuse treatment, was not performed by the PORTAL employees. Therefore, the new program was not typically and historically performed by PORTAL employees, therefore Article XII of the WFSE contract was not violated.

Initially, we note that the trial court found that: although in 1993, the PORTAL facility was not certified for mentally ill, chemical abuser patients, certification had been sought; PORTAL lacked only the required certified Chemical Dependency Counselors when the Legislature directed closure; the Director of the Washington State Department of Personnel could have authorized PORTAL to recruit

outside the merit system for employees who met the certification requirements; or the state could have provided funds to train and certify PORTAL employees. In either circumstance, the WFSE contract would not have been impaired; instead, the state closed PORTAL and privately contracted for the treatment of the voluntarily committed, mentally ill chemical abusers at Northern State.

Here, DSHS relies only upon financial considerations to justify its actions under LAWS OF 1993, 1st Spec. Sess., ch. 24, § 204(2)(b), (c).[7] DSHS cites *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979), for the proposition that appropriation decisions are within the Legislature's province and that the courts should not direct the Legislature to fund a specific program, in the absence of a constitutional mandate to the contrary. But in *Pannell*, recipients of a state-funded and state-administered "non-continuing" general assistance plan for unemployed brought suit to compel DSHS to fund the program. *Pannell* is not applicable because here we are concerned with impairment of the contract by legislation.

*Severability*

■■■ DSHS asserts that even if the closure provision, subsection 204(2)(c), is unconstitutional, the trial court erred by not severing subsection 204(2)(b) and allowing subsection 204(2)(c) to stand. LAWS OF 1993, 1st Spec. Sess., ch. 24, contains a severability clause in section 932 of chapter 24 that provides:

> [i]f any provision of this Act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

We note that "An act of the [l]egislature is not unconsti-

---

[7]LAWS OF 1993, 1st Spec. Sess., ch. 24 is the 1993 appropriation bill. Appropriation bills pertain to the administrative functions of government and do not define rights, are not rules of action and simply exist for the purpose of implementing general laws. *Flanders v. Morris*, 88 Wn.2d 183, 187-90, 558 P.2d 769 (1977) (quoting *State ex rel. Washington Toll Bridge Auth. v. Yelle*, 54 Wn.2d 545, 551, 342 P.2d 588 (1959)).

tutional in its entirety because one or more of its provisions is unconstitutional unless the invalid provisions are unseverable and it cannot reasonably be believed that the [l]egislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes." *Caritas*, 123 Wn.2d at 416-17 (quoting *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972)).

In interpreting a statute, we must give effect to legislative intent and avoid unlikely or absurd consequences. *State v. Elgin*, 118 Wn.2d 551, 825 P.2d 314 (1992*)*; *City of Kennewick v. Board for Volunteer Firefighters*, 85 Wn. App. 366, 369, 933 P.2d 423 (1997). The court must give effect to legislative intent determined "within the context of the entire statute." *Elgin*, 118 Wn.2d at 556. "In matters of economic legislation, we follow the rule giving every reasonable presumption in favor of the constitutionality of the law or ordinance" in order to avoid substituting the court's judgment for the legislature's judgment. *Leonard v. City of Spokane*, 127 Wn.2d 194, 198, 897 P.2d 358 (1995) (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 643, 771 P.2d 711 (1989)).

Here, it is the effect of both subsection 204 (b) and subsection 204 (c), in transferring civil service work to Pioneer that impairs Article XII of the collective bargaining agreement. If the Legislature intended to provide services for the community that the civil employees could have been trained for, then it necessarily follows that its decision to cut off funding to the PORTAL program renders both subsections 204(b) and (c) unconstitutional. The subsections are so connected, it would be improbable that the Legislature would have withdrawn the funding of PORTAL had it not decided to contract out the work to Pioneer. The subsections are not severable. *Leonard*, 127 Wn.2d at 201.

*Reinstatement*

Finally, DSHS contends that reinstatement is not

750

an appropriate remedy because absent a constitutional mandate, a court cannot direct program funding. *City of Ellensburg v. State*, 118 Wn.2d 709, 826 P.2d 1081 (1992). We disagree. Reinstatement is the appropriate remedy where the state seeks to privately contract for work ordinarily performed by state civil service employees. *Cunningham v. Community College Dist. No. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971); *Western Wash. Univ. v. Washington Fed'n of State Employees*, 58 Wn. App. 433, 793 P.2d 989 (1990); *Osterlof v. University of Wash.*, 17 Wn. App. 621, 564 P.2d 814 (1977), *review denied*, 89 Wn.2d 1021 (1978).

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review denied at 137 Wn.2d 1010 (1999).