THE STATE, EX REL. SIGALL ET AL., APPELLANTS, *v.* AETNA CLEANING CONTRACTORS OF CLEVELAND, INC., ET AL., APPELLEES.

[Cite as State, ex rel. Sigall, v. Aetna (1976), 45 Ohio St. 2d 308.]

(No. 74-1057—Decided March 24, 1976.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman, Mr. John A. Brown* and *Mr. W. Joseph Strapp,* for appellants.

Messrs. *Guren, Merritt, Sogg & Cohen, Mr. Kenneth G. Weinberg*, for appellee Aetna Cleaning Contractors of Cleveland, Inc.

Messrs. *Burke, Haber & Berick, Mr. Joseph F. Lombardo* and *Mr. Stephen T. Parisi*, for appellees President of Kent State University and President and Members of the Board of Trustees of Kent State University.

*Per Curiam.* The ultimate issue before this court is whether a state university, consistent with the applicable civil service laws in this state, may lawfully enter into a contract with an independent contractor regarding the performance of services which could also be rendered by classified civil service employees.

Appellants renew in this court their argument, rejected by the Court of Appeals below, that " [t]he proper test for determining the legality of a contract between a state university and a private contractor is whether the services contracted for are of such a nature that they could be performed by civil service employees."

Appellants rely upon Section 10, Article XV of the Ohio Constitution, R. C. Chapter 124, particularly R. C. 124.01(A), 124.14 and 124.34, *Canter v. Ohio University* (unreported, Court of Appeals, Athens County, March 13, 1975, Case No. 803), and a line of California decisions[1] beginning with *State Compensation Ins. Fund v. Riley* (1937), 9 Cal. 2d 126, 69 P. 2d 985, in support of their position.

Section 10, Article XV of the Ohio Constitution provides:

---

[1]The California decisions cited in appellants' brief (*State Compensation Ins. Fund v. Riley* [1937], 9 Cal. 2d 126, 69 P. 2d 985; *Stockburger v. Riley* [1937], 21 Cal. App. 2d 165, 68 P. 2d 741; and *California State Employees' Assn. v. Williams* [1970], 7 Cal. App. 3d 390, 86 Cal. 305) are based upon a constitutional provision and following legislation extremely comprehensive in scope. As such, the civil service laws of California differ markedly in purpose and effect from Section 10, Article XV of the Ohio Constitution and R. C. Chapter 124. Accordingly, we reject application of those cases as relevant to disposition of the present appeal.

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations. *Laws shall be passed providing for the enforcement of this provision.*" (Emphasis added.)

The last sentence of that constitutional provision clearly requires the conclusion that enactment of legislation must precede execution of the constitutional mandate. Stated another way, Section 10, Article XV is not self-executing, but can be implemented through legislation.

Such legislation exists in Ohio and appears as R. C. Chapter 124. The provisions of R. C. Chapter 124, so far as pertinent to this appeal, are as follows:

R. C. 124.01, the definitional section of R. C. Chapter 124, provides, in pertinent part:

"(A) 'Civil service' includes all offices and positions of trust or employment in the service of the state and the counties, cities, city health districts, general health districts, and city school districts thereof."

R. C. 124.06 provides, in pertinent part, as follows:

"No person shall be appointed, removed, transferred, laid off, suspended, reinstated, promoted, or reduced as an officer or employee in the civil service, in any manner or by any means other than those prescribed in this chapter, and the rules of the director of administrative services or the municipal or civil service township civil service commission within their respective jurisdictions."

R. C. 124.34 provides, in pertinent part:

"The tenure of every officer or employee in the classified service of the state and the counties, civil service townships, cities, city health districts, general health districts, and city school districts thereof, holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in Section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty,

drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior or any other acts of misfeasance, malfeasance, or nonfeasance in office. * * *''

R. C. 124.14 establishes pay ranges for numerous job classification titles in the employ of the state.

Appellants contend that all persons performing services for the state which fall within one of the job classifications established in R. C. 124.14, with certain exceptions not relevant herein, must be state-paid civil servants. We disagree.

R. C. 124.01 and 124.06 require that all employees of the state be employed in accordance with the civil service laws of this state. R. C. 124.34 applies only to persons in the classified service of the state. No provision of R. C. Chapter 124 commands that particular services to be rendered the state be performed *exclusively* by civil service employees. Accordingly, no statutory provision exists which prohibits the contracting out of the custodial services at issue herein.

Appellants next assert that the contracting out of custodial services by KSU would allow unlawful substantial modification of the civil service laws of this state. Again, we disagree.

In *Curtis* v. *State, ex rel. Morgan* (1923), 108 Ohio St. 292, 296, this court stated:

"There is nothing complex or difficult to understand about civil service laws and rules. The fundamental purpose is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations. *To carry out this purpose elaborate rules have been formulated, designed to facilitate its operation, but not to extend it beyond its legitimate limits.*'' (Emphasis added.)

In *Curtis,* this court upheld a temporary layoff of an

employee in the classified service of a municipality, where the layoff was necessitated by reasons of economy. Accord, *State, ex rel. Buckman,* v. *Munson* (1943), 141 Ohio St. 319.

It is clear, therefore, that a purpose of the merit system in the civil service is to eradicate the spoils system by protecting an employee who has civil service tenure from being arbitrarily discharged and replaced with a political appointee.

Decisions of this court subsequent to *Curtis, supra,* make clear that a civil service employee may be laid off or discharged for reasons of economy. *Buckman, supra; State, ex rel. Stine, v. McCaw*[2] (1940), 137 Ohio St. 13.

Since no statutory provision in this state expressly prohibits the contracting out of such services as involved in this appeal, and, since this court has held that a civil service position may be abolished for reasons of economy, we conclude that the contracting out by KSU of a portion of its custodial services, resulting in a saving of over $300,000 in state funds, does not violate the civil service laws of this state.

We adopt as the test in this case to be applied in determining the lawfulness of such service contracts the one promulgated by the Court of Appeals below, as follows:

"In the absence of proof of an intent to thwart the purposes of the civil service system, the board of trustees

---

[2]*Canter* v. *Ohio University, supra,* cited by appellants in support of their position, is factually similar to *McCaw* except for one salient point. In *McCaw*, a merger of two positions for the purpose of economy resulted in the discharge of a civil service employee and the retention of a provisional civil service appointee named to perform the duties of the single, new position created by the said merger.

In *Canter*, however, no new position was created. Accordingly, the attempted discharge of a civil service employee and the concomitant transfer of his former duties to a non-civil service employee was held contrary to the civil service laws of this state. *Canter*, then, does not support appellants' position in the instant case since no civil service employee was discharged due to the contracting out of custodial services by KSU. *Canter* does, however, illustrate that the courts of this state will safeguard against attempts to thwart the purposes of the civil service system and, in this regard, is supportive of the decision herein.

of a state university may lawfully contract to have an independent contractor perform services which might also be performed by civil service employees."

In applying that test to the facts of this case, the Court of Appeals correctly held:

"Plaintiffs introduced no evidence tending to establish that the Board of Trustees of Kent State entered into the contract in a bad faith attempt to circumvent the purposes of the civil service system.

"In fact, the evidence adduced at trial tends to establish the good faith of the Board. Aetna was awarded the contract on the basis of being the lowest of three bidders. Aetna did its own hiring, thus effectively eliminating the possibility of the operation of a 'spoils system' by the University. Apparently, no civil service employee was ever displaced by an Aetna employee. Consequently, the contention that civil service employees were removed in bad faith is unavailable to plaintiffs appellees.

"Because plaintiffs sought the injunction, they had the burden to prove a clear right thereto. *Spangler* v. *City of Cleveland* (1885), 43 Ohio St. 526. See also, *Schiff* v. *City of Columbus* (1967), 9 Ohio St. 2d 31; *Oberhaus* v. *Alexander* (1971), 28 Ohio App. 2d 60; *White* v. *Long* (1967), 12 Ohio App. 2d 136. Plaintiffs have not met this burden."

For the foregoing reasons, the Judgment of the Court of Appeals, dissolving the injunction issued by the Court of Common Pleas, is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.