[No. 18480-0-II.    Division Two.    July 26, 1996.]

THE RETIRED PUBLIC EMPLOYEES COUNCIL, ET AL.,
*Appellants*, v. THE HEALTH CARE AUTHORITY, ET AL.,
*Respondents.*

*Edward E. Younglove III, Gina M. Bissell*, and *Swanson, Parr, Cordes, Younglove & Peeples*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Melissa Ann Burke Cain, Assistant*, for respondents.

ARMSTRONG, J. — The Retired Public Employees Council of Washington (Council) filed a class action lawsuit, on behalf of retired state employees over 65, challenging the State's method of calculating health insurance premiums. The Council alleged that the State improperly set the premiums of retired state employees over 65 based on the claims experience of only active employees over 65, rather than of all active employees, in violation of RCW 41.05.080. Because the plain language of the statute requires that

the premiums of retired state employees be determined from the claims experience of all active employees, we reverse the trial court's summary judgment for the State.

## FACTS

The Council is a non-profit labor organization comprised of retired state and local employees. It filed a class action lawsuit on behalf of retired state employees over the age of 65 who participate in the State's Uniform Medical Plan (Uniform Plan) for health insurance. The Washington State Health Care Authority (HCA) is the state agency that administers state employees' health insurance benefits.

In the 1970s, state employees paid their own medical insurance premiums. Employees could participate in their health insurance plan after retirement. The law, however, required that retired employees be charged the same premium as active employees. *Former* RCW 41.05.080 (LAWS OF 1973, ch. 147, § 7).

In 1977, the State began underwriting the insurance premiums of its active employees. Because state employees were no longer being charged premiums, the Legislature amended the law to provide that the rate for retired employees "be developed from the same experience pool as active employees." *Former* RCW 41.05.080 (LAWS OF 1977, 1st Ex. Sess., ch. 136, § 6).

In 1988, the State began to self-insure the Uniform Plan, a traditional fee-for-service health plan. The present dispute concerns the process the HCA developed and used to set premiums for retired employees over 65 from 1988 to 1994.[1]

The HCA first determined the projected total cost of the

---

[1] In 1994, the Legislature amended the statute to provide that the rate for retired employees over 65 shall be determined from a separate claims pool consisting only of such retired employees. *See* RCW 41.05.080.

Uniform Plan for the upcoming fiscal year, based on the previous year's claims from all Uniform Plan subscribers, administrative costs, and any additional expenses because of benefit changes. The HCA allocated the total cost of the Uniform Plan to four employee groups based on each group's medical costs: active employees under 65, active employees over 65, retired employees under 65, and retired employees over 65. The HCA reported these medical costs as relative cost factors. The HCA then established premiums by allocating the Uniform Plan's total cost to the subscribers in proportion to the relative cost factors.

Because the State has paid the premiums of almost all active employees since 1988, the monthly premiums for active employees were calculated primarily for purposes of the budget. The relative cost factor for retired employees, however, established the base for calculating the premiums charged retired employees under the statute.

The HCA assigned active employees under 65 a relative cost factor of 100 percent. People over 65 have, in general, higher medical costs than those under 65; the HCA calculated the relative cost factor for active employees over 65 to be 229 percent. Retired employees over 65 received the same 229 percent relative cost factor.

After the full amount of the premium to be charged retired employees was calculated, it was "actuarially reduced" by the value of Medicare coverage.[2] The parties agree that Medicare pays, on average, 70.5 percent of Medicare-eligible retirees' claims covered under the Uniform Plan. The Uniform Plan pays the remaining 29.5 percent of the claims. Accordingly, the Uniform Plan premium charged retired employees over 65 was reduced by 70.5 percent.

---

[2]Medicare-eligible retirees includes a few persons under 65 who are eligible because of a disability. Because these individuals are statistically insignificant for rate determination purposes, medicare eligible retirees means retired employees over 65.

A few active employees, however, pay their own health insurance premiums. The HCA charged a single premium rate to these self-paying, active employees, regardless of their age. Furthermore, the State provides insurance coverage to other governmental entities; the HCA charged these various political subdivisions a single premium rate that did not reflect an employee's age.[3]

Although the State charged retired employees over 65 the same premium rates as active employees over 65, retired employees actually have higher health care costs. This resulted in a subsidy to retired employees of approximately $8.7 million.

The Council maintains that RCW 41.05.080 required that premiums for retired employees over 65 be determined from an experience pool composed of all active employees, rather than just active employees over 65. According to the Council, a single monthly premium should have been determined for all active employees. Retired employees over 65 would have paid this same amount, minus the 70.5 percent reduction for Medicare reimburse-

---

[3]For illustrative purposes, this chart contains the preliminary relative cost factors and resulting premiums for Uniform Plan participants in 1991-92.

Uniform Medical Plan for 1991-92 year

|  | Population | Cost Factors | Monthly Premium |
|---|---|---|---|
| Active under 65 | 54,198 | 100% | $117.70 |
| Retired under 65 (no medicare) | 4,554 | 100% | $117.70 |
| Active over 65 | 688 | 229% | $269.53 |
| Retired over 65 (medicare retiree) | 12,516 | 68% | $80.03 |

The relative cost factor and premium of retired employees under 65 equals the factor and premium of active employees under 65. The factor and premium of retired employees over 65, those eligible for Medicare, equals the factor and premium of active employees over 65, before the 70.5 percent reduction to reflect Medicare reimbursements.

ment.[4] Under this formula, the State would have provided a subsidy of approximately $14.7 million to retired employees.

Both parties moved for summary judgment. The trial court granted summary judgment for the HCA, finding that use of the over-65 active employee age group to set premiums of retired employees over 65 was authorized by the statute.

## DISCUSSION

### A. Statutory construction

In construing a statute, the court's paramount duty is to ascertain and give expression to the intent of the Legislature. *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985). The interpretation of a statute is a question of law. *Waste Management of Seattle, Inc. v. Utilities and Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). Accordingly, the court engages in a *de novo* review of the trial court's determination. *Waste Management*, 123 Wn.2d at 627. The court interprets a statute according to the plain and ordinary meaning of its language. *Flanigan v. Department of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994).

If a statute is unambiguous, the court will determine

---

[4]The following chart illustrates the position advocated by the Council for Uniform Plan participants in 1991-92.

### Uniform Medical Plan for 1991-92 year

| | Population | Cost Factors | Monthly Premium |
| --- | --- | --- | --- |
| All Actives | 54,866 | 100% | $126.37 |
| Retired under 65 (no Medicare) | 4,554 | 100% | $126.37 |
| Retired over 65 (Medicare retiree) | 12,516 | 29.5% | $37.28 |

The cost factor and premium of all retired employees equals the factor and premium of all active employees, before the 70.5 percent reduction to reflect Medicare reimbursements for retired employees over 65.

the Legislature's intent from the language of the statute alone. *Waste Management*, 123 Wn.2d at 629. If a statute is susceptible to more than one meaning, it is ambiguous and consideration of the legislative history is appropriate. *Timberline Air Service, Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994). Where an agency is charged with administration of an ambiguous statute, the agency's interpretation is accorded deference. *Waste Management*, 123 Wn.2d at 628. The court, however, retains the ultimate authority to interpret the statute. *Waste Management*, 123 Wn.2d at 628.

B. Premiums of retired employees under RCW 41.05.080

The Legislature first enacted RCW 41.05.080 in 1970. *See former* RCW 41.05.080 (LAWS OF 1970, ch. 39, § 8). Under this law, retired employees could participate in insurance plans after retirement; however, retired employees had to bear the full cost of their insurance premiums. *See former* RCW 41.05.080 (LAWS OF 1970, ch. 39, § 8). Three years later, the Legislature amended the statute to require that retired and active employees be charged identical premium rates.[5] *See former* RCW 41.05.080 (LAWS OF 1973, ch. 147, § 7).

In 1977, when the State began paying the insurance premiums of active state employees, the Legislature amended the statute to provide in part:

> *[T]he rates charged such retired or disabled employees for health care will be developed from the same experience pool as active employees*: PROVIDED FURTHER, That such retired or disabled employees shall bear the full cost of premiums required to provide such coverage: PROVIDED FURTHER, That such self pay rates will be established based on a separate rate for the employee, the spouse, and the children:

---

[5]The Legislature also amended the statute with regard to the eligibility of county, municipal, and school employees to continue their insurance coverage. *See former* RCW 41.05.080 (LAWS OF 1975-76, 2d Ex. Sess., ch. 106, § 6; LAWS OF 1993, ch. 386, § 11). These amendments, concerning the scope of the insured employees under the statute, are not relevant to the present dispute.

PROVIDED FURTHER, That rates for a retired or disabled employee, spouse, or child who is eligible for and who elects to apply for medicare will be actuarially reduced to reflect the value of Part A and Part B of medicare.

Former RCW 41.05.080 (LAWS OF 1977, 1st Ex. Sess., ch. 136, § 6) (emphasis added).

The language of the statute is clear and unambiguous. The premiums of retired employees must "be developed from the same experience pool as active employees." *Former* RCW 41.05.080 (LAWS OF 1977, ch. 136, § 6). The statute requires a single experience pool consisting of all active employees; it does not authorize multiple pools. RCW 41.05.011(6) defines employees as "all full time and career seasonal employees of the state." RCW 41.05.011(6). Nothing in the statute suggests that the HCA has the authority to establish the premiums for retired employees on the basis of any group other than all active employees.

The HCA, however, argues that because the statute requires retired employees to bear the full cost of their premiums, it has authority to actuarially adjust the premiums for the rising costs of health care based on age. The statute, however, has contained this language regarding the full cost of premiums since 1970. *See Former* RCW 41.05.080 (LAWS OF 1970, ch. 39, § 8; LAWS OF 1973, ch. 147, § 7). Furthermore, between 1973 and 1977, the statute specifically required that the rate charged retired employees be identical to that charged active employees. Accordingly, this statutory language does not mean that retired employees must pay all the actual costs of their care. Instead, retired employees must pay the entire premium after it is properly calculated on the basis of all active employees.

The HCA then argues that because RCW 41.05.080 requires that the premiums be "actuarially reduced," the statute allows an age adjustment. This argument is also not correct. The statute does not provide that the rates are to be "actuarially developed," only reduced. Further-

more, the rates are to be reduced by the value of Medicare payments, not on the basis of the employee's age. The reduction for the value of medicare is taken only after the premiums are properly calculated on the basis of all active employees; the "actuarially reduced" language does not mean that premiums may be actuarially determined by the employee's age.

■ Finally, the HCA contends that the Council's method would create a large state subsidy for retired employees. The costs to the State, however, cannot form a basis for avoiding the mandate of a statute. *Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 702-03, 585 P.2d 474 (1978). Both sides admit that the HCA's method already provides an $8.7 million subsidy. The Council's method would generate a larger subsidy, approximately $14.7 million. The issue of the appropriate subsidy amount for retired state employees was for the Legislature, not the HCA. As we have noted, the Legislature amended the statute in 1994 to reduce the amount of the subsidy.

In conclusion, we hold that the language of the statute is unambiguous; the HCA was required to established the premiums for retired employees over 65 on the basis of all active state employees, not just those over 65. The Legislature intended to subsidize the health care premiums of retired state employees; the HCA's method of setting retired employee premiums frustrated, in part, this intended subsidy. The summary judgment for the State is reversed; the matter is remanded.

BRIDGEWATER and TURNER, JJ., concur.

Review denied at 130 Wn.2d 1024 (1997).