[No. 19225-0-II. Division Two. April 4, 1997.]

WASHINGTON FEDERATION OF STATE EMPLOYEES,
*Respondent*, v. JOINT CENTER FOR HIGHER
EDUCATION, *Appellant*.

2

*Christine O. Gregoire, Attorney General*, and *Brian L. Ernst, Assistant*, for appellant.

*Edward E. Younglove III* and *Swanson, Parr, Cordes, Younglove & Peeples*, for respondent.

Wood, J.P.T.* — The Joint Center for Higher Education appeals an injunction prohibiting it from contracting with private vendors to provide janitorial services at the Spokane Intercollegiate Research and Technology Institute. Concluding that the Washington Federation of State Employees has standing to sue for such relief, and that the trial court correctly ruled that the Center lacks authority to contract privately for such services, we affirm.

## Background

The Joint Center for Higher Education (Center) is a public institution charged with overseeing the cooperative delivery of postsecondary educational programs. The Washington Federation of State Employees Council 28 (Federation) is a labor union representing state civil service employees. In 1994, the Center constructed and opened the Spokane Intercollegiate Research and Technology Institute (SIRTI). When the Center advertised for private contracts to provide janitorial services at the new SIRTI facility, the Federation sued for an injunction declaring such contracting-out of services to be illegal. The parties stipulated to the relevant facts so that the matter could be resolved quickly. After hearing argument on cross-motions for summary judgment, the trial court

---

*Judge George L. Wood is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

ruled that the Center had no statutory authority to contract privately for janitorial services and issued an injunction against it. The Center now appeals, contending that the Federation lacks standing to bring suit and that the trial court erred in its ruling.

## Standing

The basic test for standing is "whether the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Seattle Sch. Dist. No. 1 of King County v. State,* 90 Wn.2d 476, 493, 585 P.2d 71 (1978) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)). Our Supreme Court has criticized "unrealistically strict" considerations of standing, and it has noted that Washington is increasingly taking a broader, less restrictive view. *Seattle Sch.,* 90 Wn.2d at 493.

The Center contends that the Federation lacks standing because it "[fails to] identify a single employee whose rights might be affected," thus civil service rights are only speculative. But the assertion of a hypothetical or speculative injury does not necessarily negate a party's standing to sue. Our Supreme Court has held, for example, that a public agency has standing to challenge a state statute under which it was required to act (*Snohomish County Bd. of Equalization v. Washington State Dep't of Revenue,* 80 Wn.2d 262, 264, 493 P.2d 1012 (1972)); and the Seattle School District had standing to challenge legislation that it believed placed financial constraints on its ability to fund public education. *Seattle Sch.,* 90 Wn.2d at 493-94.

A party may have standing in either a personal or a representative capacity. *Vovos v. Grant,* 87 Wn.2d 697, 700, 555 P.2d 1343 (1976). The Federation, as the labor organization representing current and potential civil service janitorial personnel, asserts representational standing.

State law anticipates and favors the concept of a labor union's representational standing in controversies such as this one. Under Title 39, Public Contracts and Indebtedness (RCW 39.04.010), all public works, including maintenance when performed by contract, must comply with the provisions of RCW 39.12.020. That statute, in turn, defines an " interested party" to include "an organization whose members' wages, benefits, and conditions of employment are affected by this chapter." RCW 39.12.010(4); *see also Seattle Bldg. & Constr. Trades Council v. Washington State Apprenticeship & Training Council*, 129 Wn.2d 787, 920 P.2d 581 (1996).

The parties have stipulated to the fact that "[u]nless resolved quickly, current or potential civil service employees will be illegally deprived of employment." Because of the resources available to it, the Federation is better positioned than any of its individual members to address the present issues.[1] We uphold the trial court's finding that the Federation has standing to assert its members' interests in this matter.

Private Sector Contracting vs. Public Service Employees

■ At the heart of this controversy is whether the Center, a state institution of higher education, has statutory authority to contract for services traditionally performed by civil service employees. A court's paramount duty in construing a statute is to ascertain and give expression to the intent of the Legislature. *Retired Pub. Employees Council v. Health Care Auth.*, 82 Wn. App. 773, 778-79, 919 P.2d 625 (1996), *review denied*, 130 Wn.2d 1024 (1997).

---

[1]The Federation has represented its membership in similar cases before the courts of this State. *See Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 585 P.2d 474 (1978), and *Western Wash. Univ. v. Washington Fed'n of State Employees*, 58 Wn. App. 433, 793 P.2d 989 (1990).

The Center contends that it is a unique entity.[2] It argues that the Legislature gave its governing board an unlimited grant of authority to contract for services outside of customary civil service laws when it provided that: "The board shall have authority to contract for services as deemed appropriate to carry out its functions. Such services shall include, but not be limited to, facilities . . . management . . . ." RCW 28B.25.050. It finds further support in former RCW 28B.25.040, which says that the board "shall hire a director who *may* hire other staff under chapter 28B.16 RCW [Civil Service Law, recodified in the Higher Education Personnel Law at RCW 41.06.010-.911] as necessary to carry out the center's duties." Former RCW 28B.25.040 (emphasis added). The Center interprets "may," here, as granting the director permission *not* to hire civil service staff.

Disagreeing with this interpretation, the Federation opposes the claim that "facilities . . . management" equates to janitorial services. It argues that the Center's attempt to contract privately for janitorial services violates express provisions of the state's civil service laws and undermines judicially recognized principles underlying the civil service merit system. The Federation contends that if the Legislature had intended to create an exemption to civil service hiring requirements, it would have concurrently amended the civil service law (here, the State Civil Service Law, RCW 41.06.070(2), Laws of 1993, ch. 281, § 23).

■■ We agree with the Federation that the Legislature did not intend for the Joint Center for Higher Education

---

[2]The Center claims it is unique because it is the first higher education institution in the State of Washington with the responsibility of coordinating the academic offerings of a state university (WSU), a regional university (EWU), a community college district, and private institutions of higher education (Gonzaga University and Whitworth College). SIRTI, which the Center oversees, is the only intercollegiate research and technology institute in the state. We infer, however, that the type of janitorial services required in SIRTI's classroom building are indistinguishable from the janitorial services required in any other state higher education facility.

enabling act[3] to supersede civil service laws or to grant to the Center unlimited power to engage independent contractors or to privatize janitorial services. The Legislature is presumed to know existing case law in areas in which it is legislating, and thus, common law may be considered in ascertaining the proper scope of a statute. *In re King County for Foreclosure of Liens*, 117 Wn.2d 77, 86, 811 P.2d 945 (1991). Several cases are pertinent to our analysis: *Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 585 P.2d 474 (1978); *Cunningham v. Community College Dist. No. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971); and *Western Wash. Univ. v. Washington Fed'n of State Employees*, 58 Wn. App. 433, 793 P.2d 989 (1990).

In *State Employees*, the Washington Federation of State Employees challenged an attempt by the Washington State Community College District No. 17 to contract for custodial services for a new administration building located at the Spokane Community College, general services historically performed by civil service personnel. The College argued that the civil service personnel law applied only to existing civil service employees and not to newly created positions. Consequently, since this was a new building with newly created positions, it was not necessary, according to the college, to hire civil service employees. In rejecting this argument, the Supreme Court found the purpose and policy behind our State's civil service law to be focal considerations:

> In view of the basic purpose and policy of the State Higher Education Personnel Law, we conclude that the general power of the purchasing director to procure services for community colleges granted in RCW 43.19.190 cannot be construed to authorize contracts for services ordinarily provided, and capable of being provided by civil servants. The interpretation suggested by the College would derogate substantially from the rights, both express and necessarily implied, of civil

---

[3]RCW 28B.25, LAWS OF 1985, ch. 370, § 103, as amended by LAWS OF 1991, ch. 205, §§ 7, 8.

service employees. We are not persuaded the legislature intended such a derogation, in the absence of any clear legislative expression to that effect. We recognize that some services have historically been procured by contract. We agree with the Federation, however, that RCW 43.19.190 was not intended to enlarge the authority of the Director of General Administration with regard to the types of services which may be so procured. The contract entered into here would be such an enlargement. We therefore hold the contract was unauthorized, and is void.

*State Employees,* 90 Wn.2d at 704-05.

In *Cunningham* our Supreme Court rejected a contention by Olympic College that its food service employees were exempt from civil service law. The College had sought to terminate the employment of certain workers and to contract independently for food services. It asserted a basic "management control" right based upon RCW 28B.50.140, which specifically empowered Olympic College to establish food service facilities. It argued, like the Center does here, that this legislative grant of power superseded civil service laws. *Cunningham,* 79 Wn.2d at 803. The Court rejected the contention, concluding:

> If the legislature intended the Community College Act to authorize, what is in effect an exemption of food service employees from the protection of the [civil service laws], it would have manifested its intention either by further amendment to the Community College Act or by insertion of an additional exemption in the State Higher Education Personnel Law. . . .

*Cunningham,* 79 Wn.2d at 803-04.

*Western Wash. Univ.* quoted *Cunningham* with approval when deciding, in a similar manner, that Western Washington University was not free to establish a privatized police force:

> We find the holding of *Cunningham* dispositive on this issue. Clearly, if the Legislature had intended to exempt campus police officers from the protection of the civil service laws by virtue of the mere grant of authority to such institu-

tions to establish a police force, it would have indicated such intent either in the authorizing statute, RCW 28B.10.550, or by listing police officers as exempt personnel under RCW 28B.16.040. It did neither and, thus, we conclude that the University's power to establish a police force pursuant to RCW 28B.10.550 is subject to the State Higher Education Personnel Law.

*Western Wash. Univ.*, 58 Wn. App at 439.

 These cases, especially when applied in the context of legislative drafting guidelines[4] and more recent legislation governing the Center and SIRTI,[5] strongly support the trial court's entry of a permanent injunction against outside contracting for custodial and janitorial services at SIRTI. There is no clear mandate in the Center's authorizing statute for replacing traditional civil service employee functions with private workers, nor has the Legislature amended the State Civil Service Law to permit such privatizing. The Legislature has been told by our Supreme Court that if it intends to create exceptions

[4]The Washington Code Reviser's Bill Drafting Guide describes three ways to exempt an employee or an agency from state civil service laws:

"(a) a new section may be added to [the civil service law] exempting the particular position or entity, (b) the extensive [statutory] list . . . describing the various exempt positions may be amended, or (c) a new section may be included in the material being drafted. . . ."

*Bill Drafting Guide*, State of Washington Statute Law Committee, Office of the Code Reviser, at 15-16 (1994). None of the above occurred here.

[5]"Any new provisions of a statute are then deemed to be adopted in light of and with reference to the earlier act." *State v. Roth*, 78 Wn.2d 711, 715, 479 P.2d 55 (1971). "The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof." RCW 1.12.020.

At the request of the Center, the 1996 Legislature revisited the issue of whether the Center has the right to contract privately. House Bill 2637 would have, among other things, amended the Center's authorizing act by granting its board express permission to engage in private contracting. A stripped-down version of this bill was later enacted, but the Legislature rejected these private contracting provisions.

More significantly, a separate bill, H.B. 1004, was introduced to amend RCW 41.06.382 to specifically permit the Center to purchase services by contract with individuals or entities if such contracting did not have the effect of terminating current civil service employees. Third Sub., H.B. 1004, § 1, 54th Legis., Reg. Sess. (1996). This bill "died" without becoming law.

to the Civil Service Law, it must do so specifically. *State Employees*, 90 Wn.2d at 705. We reject the Center's argument that it has unlimited authority to contract for janitorial services, and conclude that it does not.

Affirmed.

MORGAN and SEINFELD, JJ., concur.