[No. 21205-6-II. Division Two. March 13, 1998.]

WASHINGTON FEDERATION OF STATE EMPLOYEES,
*Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, ET AL., *Appellants*.

502

*Christine O. Gregoire, Attorney General,* and *Mitchel R. Sachs, Assistant,* for appellants.

*Edward E. Younglove III* of *Swanson, Parr, Cordes, Younglove & Peeples,* for respondent.

BRIDGEWATER, J. — The Department of Social and Health Services (DSHS) appeals a declaratory judgment that a contract between DSHS and Oberg Personnel Agency constitutes illegal contracting-out of civil service work required to be performed by civil service employees, and enjoining DSHS from giving effect to the contract. DSHS contends that the contract was valid under former RCW 74.25.020(1)

(1993), the statute establishing the JOBS program, and RCW 41.06.380, the state civil service law. Since RCW 74.25.020(1) was repealed in 1997, the issue is moot regarding that statute. We also hold that the contract was invalid under the state civil service law because DSHS did not regularly contract, before 1979, for the same services as those provided by Oberg under the current contract. We affirm.

Civil service employees at the Department of Employment Security (ES) with the title "job service specialist" provide job placement services. In February 1995, DSHS contracted with Oberg to provide job placement services for DSHS clients. The Washington Federation of State Employees (the Federation) subsequently filed a complaint for injunctive and declaratory relief seeking to have the contract declared illegal as a violation of the state civil service law, RCW 41.06. The parties stipulated that the Federation is the exclusive bargaining representative for civil service employees employed by DSHS and ES, that DSHS entered into a contract with Oberg in February 1995 requiring Oberg to provide job placement services for DSHS, that ES employs job service specialists who perform job placement services and are civil service employees, that DSHS has previously referred its clients to ES to perform such job placement services, that job placement is the type of work historically and traditionally performed by ES civil service employees, and that an ES job service specialist filed a grievance regarding the contract in accordance with the Federation's collective bargaining agreement.

Following a trial in May 1996, the trial court found that the ES job service specialists have historically performed services for clients of the State by helping such individuals find employment, that job service specialists have been outstationed in DSHS's Community Service Offices, that Oberg is a private for-profit employment placement agency, that the only service required of Oberg under the contract was job placement, that the DSHS-Oberg contract was a performance-based contract, that a significant term of the

contract stated "DSHS certifies that JOBS Program services provided under this agreement are not duplicating or replacing JOBS Program services provided by State employees," and that DSHS and ES have an interagency agreement for JOBS Program services whereby ES counselors are stationed at DSHS's Community Service Offices to perform services for participants referred to them by DSHS.

The trial court also found that the services performed by ES counselors have been performed regularly over a period of many years, that the ES counselors are capable of continuing to perform those services and in fact are performing them, and that all three DSHS Community Service Offices in Spokane were affected by the Oberg contract. Important for our consideration, the trial court found that, before the contract, DSHS referred JOBS Program participants to ES counselors or third party contractors for job placement and other services; that the third party contractors received referrals of participants who, in addition to general job placement, needed specialized services such as on-the-job training, English as a second language, and placement for disabled participants; and that ES counselors could and did make the same type of outside referrals.

The trial court further found that Oberg did not offer specialized services for the participants but only job placement for job-ready participants, that this service is included among the services offered by ES counselors, that DSHS entered into the Oberg contract to obtain a mix of ES and community-based service for the participants, that DSHS believes that Oberg has the opportunity to place participants with a wider range of employers since some employers prefer not to deal with public agencies or hire public assistance recipients, and that ES counselors occasionally refer participants to for-profit placement agencies where the circumstances are appropriate. The trial court also found that the participants referred to Oberg during the four months that the contract was enforced would otherwise have been referred to one of the ES counselors for job

placement or other services; that the ES counselors stationed at one of the Spokane Community Service Offices experienced a noticeable reduction in the referrals made to them; that some participants were transferred from ES counselors to Oberg; that the evidence did not reflect that any ES positions were lost or that any funds were diverted from ES to Oberg as a consequence of the contract, but that, in part at least, this was "due to the short period of time when the contract was actually being implemented"; and that, although DSHS contracted some job placement services to third party contractors at least as early as 1976, the contractor in each instance provided an additional specialized service not offered by state agencies.

The trial court concluded that RCW 41.06.380, part of the civil service law, does not authorize the contract with Oberg; that DSHS's contracts with third party contractors before 1979 included specialized services not offered by ES; that the service provided by Oberg is the type of job placement that is regularly provided by ES; that to qualify under RCW 41.06.380, the services provided by Oberg would have to have been specialized services similar to those historically contracted out; that the fact that DSHS historically obtained job placement services from ES, a separate state agency, does not create an exception under RCW 41.06.380; and that the statute cannot be reasonably construed as allowing an agency to contract out to a private organization services that have been performed by another state agency since before 1979.

The trial court concluded that RCW 74.25.020(1) did not permit DSHS to contract out for job placement services that were regularly provided by civil service employees and which civil service employees are capable of providing, that RCW 74.25.020(1) did not authorize DSHS to contract out services ordinarily provided and capable of being provided by civil servants, that RCW 74.25.020(1) was not intended to create nor does it create an exception to the state civil service law, that the statute does not derogate from the civil service rights of civil service employees, that the

DSHS-Oberg contract is unlawful, and that the Federation is entitled to injunctive relief prohibiting DSHS from further giving effect to the contract. DSHS appeals.

## I. Mootness

The Oberg contract was of a short duration and has expired. RCW 74.25.020(1) was repealed in 1997 and any decision based on this statute would be moot. The State maintains that this contract is permissible under RCW 41.06.380. The Federation asks us to decide this question because the State may seek to enter other similar contracts in the future. We agree, based on *In re Detention of Swanson*, 115 Wn.2d 21, 793 P.2d 962, 804 P.2d 1 (1990).

## II. Standard of Review

"Ordinary rules of appellate procedure apply to an appeal from a declaratory judgment." *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992) (citing *Nollette v. Christianson*, 115 Wn.2d 594, 599-600, 800 P.2d 359 (1990)). Where the trial court has weighed the evidence, the scope of review on appeal is limited to ascertaining whether the findings of fact are supported by substantial evidence, and, if so, whether the findings support the conclusions of law and judgment. *Doe v. Boeing Co.*, 121 Wn.2d 8, 18-19, 846 P.2d 531 (1993). DSHS assigns error to the trial court's findings 16, 22 and 24, and to the trial court's conclusions 4 through 9, but does not address finding 24 or conclusions 5, 8 and 9 in its brief. The court need not "engage in conjectural resolution of issues presented but not briefed." *State v. Valentine*, 75 Wn. App. 611, 618, 879 P.2d 313 (1994) (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 456, 832 P.2d 1303 (1992)), *affirmed*, 132 Wn.2d 1, 935 P.2d 1294 (1997).

DSHS assigns error to the trial court's finding 16 that "[t]he justification offered by the defendant for its entering into the contract with Oberg is the desire for a mix of Employment Security and community-based service to its clients." Terry Covey, a DSHS program manager, testified

that, when it entered into the contract with Oberg, DSHS was "looking for resources that had access to a different or additional job placement services and access to additional employers who had vacancies." Covey also testified that DSHS's goal was to try to tap into a market of prospective employers that ES could not reach and to refer DSHS clients to agencies who charged a fee for finding jobs. Donald Ott, an ES job service area administrator, testified that some employers do not list their openings with ES, a public agency, but do list their openings with Oberg, a private fee-charging agency, and that, consequently, DSHS entered into the contract with Oberg "to get that slice of the employer community" not open to ES. Ott also testified that "Oberg may give them access to some employers who don't work with us." There is substantial evidence in the record to support the trial court's finding.

■ DSHS next assigns error to the trial court's finding 22 that, before the Oberg contract, contracts between DSHS and third party contractors were for additional specialized services not offered by other state agencies or their civil service employees, and that these services were different from the services offered by Oberg. DSHS fails to assign error to finding 14, which states that, prior to February 10, 1995,

> [t]he third party contractors offered specialized services in addition to job placement and received referrals of participants who needed those additional services. Examples of such specialized service include on-the-job training at the contractor's site, general or specialized education, English as a Second Language, and specialized placement for disabled persons.

DSHS also does not assign error to finding 15, which states, "Oberg Personnel Agency did not offer specialized services to JOBS Program participants. It offered job placement service to job-ready participants. This service is included among the services offered by Employment Security counselors." These unchallenged findings are verities on appeal and substantially support the trial court's finding

that the services offered by other third party contractors were different from the services offered by Oberg. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

## III. RCW 41.06.380

RCW 41.06.380, part of the civil service law, states:

> Nothing contained in this chapter shall prohibit any department, as defined in RCW 41.06.020, from purchasing services by contract with individuals or business entities if such services were regularly purchased by valid contract by such department prior to April 23, 1979: PROVIDED, That no such contract may be executed or renewed if it would have the effect of terminating classified employees or classified employee positions existing at the time of the execution or renewal of the contract.

(Enacted by LAWS OF 1979, 1st Ex. Sess., ch. 46, § 2, effective September 1, 1979). Findings 14, 15 and 16, explained above, support conclusion 4, that to qualify under RCW 41.06.380, the services provided by Oberg would have to have been specialized services similar to those historically contracted out, and that the Oberg contract is not allowed under the statute because the contracts with third parties before 1979 included specialized services not offered by ES, whereas the services provided by Oberg are regularly provided by ES.

DSHS's argument, that we must view the services provided by private contractors before 1979 as divided into separate services, is meritless. DSHS admits that the participants referred to third party contractors before 1979 were not "job-ready." But DSHS maintains that the private providers offered two services: (a) specialized services to get the participants "job ready," e.g., by improving their skills; and (b) regular job placement. DSHS invites us to draw a distinction by segregating the services into components, and to conclude that, before 1979, DSHS contracted out the type of job placement provided by Oberg under the

contract: job placement for job-ready participants not in need of any specialized services. We find this argument meritless as the specialized services and the regular job placement services provided by third party contractors before 1979 were provided in connection with one another. We find substantial evidence to support the trial court's findings, and the conclusions of law are supported by the findings.

Further support for the Federation's position is found in case law addressing the protections of the civil service law. In *Washington Fed'n of State Employees v. Spokane Community College*, 90 Wn.2d 698, 585 P.2d 474 (1978), a landmark case in this area of law, the Federation sought injunctive and declaratory relief against Spokane Community College when the school contracted with a private company to provide custodial services for a new building. The issue in *Spokane Community College* was

> whether a governmental agency which is expanding its facilities may contract with an independent contractor to provide services in those facilities which are customarily done by civil servants, where there is no showing the services could not be done by civil servants and where the sole reason for entering into the contract relationship is an anticipated savings in cost.

90 Wn.2d at 698-99. Despite the undisputed cost-savings to the college and the fact that such action would not operate to terminate any civil service positions or employees, the Supreme Court held that, as a matter of law, the college had "no authority to enter into a contract for new services of a type which have regularly and historically been provided, and could continue to be provided, by civil service staff employees, and that the contract entered into [by the school was] void." *Id.* at 699-700. The court's decision that the Legislature intended to give maintenance workers full civil service protections was based on former RCW 28B.16.040, which specifically provided that " 'no nonacademic employee engaged in office, clerical, maintenance, or food and trade services may be exempted.' " *Id.* at 700-01 (quoting RCW 28B.16.040).

The policy of the civil service system is to establish merit as the basis for selecting personnel. It creates a classified service composed of civil servants selected on the basis of merit to fill the state's personnel needs. Procurement of services ordinarily and regularly provided by classified civil servants through independent contracts, although not specifically prohibited by the State Higher Education Personnel Law, directly contravenes its basic policy and purpose. *Therefore, where a new need for services which have been customarily and historically provided by civil servants arises, and where there is no showing that civil servants could not provide those services, a contract for such services is unauthorized and in violation of the State Higher Education Personnel Law.*

*This is so regardless of the cost savings which might be made through such a contract.*

*Spokane Community College*, 90 Wn.2d at 702-03 (citation omitted) (emphasis added).

We recently decided in *Washington Fed'n of State Employees v. Joint Ctr. for Higher Educ.*, 86 Wn. App. 1, 933 P.2d 1080 (1997), whether a state institution of higher education has statutory authority to contract for services traditionally performed by civil service employees. *Id.* at 5. The Federation sued for an injunction when the Joint Center for Higher Education sought private contracts to provide janitorial services at a new educational facility. *Id.* at 3. The school relied on RCW 28B.25.050, which states that the governing board shall have authority to contract for services as deemed appropriate to carry out its functions, and which services shall include, but not be limited to, "facilities management." *Id.* at 6. The Federation claimed that Joint Center's "attempt to contract privately for janitorial services violates express provisions of the state's civil service laws and undermines judicially recognized principles underlying the civil service merit system." *Id.* This court agreed that if the Legislature had intended to create an exemption to the civil service hiring requirements, it would have concurrently amended the civil service law, RCW 41.06.070(2), and concluded that the

Legislature did not intend for the enabling act to supersede the civil service laws or to grant the Center unlimited power to engage independent contractors or privatize janitorial services. *Joint Center,* 86 Wn. App. at 6-7.

> There is no clear mandate in the Center's authorizing statute for replacing traditional civil service employee functions with private workers, nor has the Legislature amended the State Civil Service Law to permit such privatizing. The Legislature has been told by our Supreme Court that if it intends to create exceptions to the Civil Service Law, it must do so specifically. *State Employees,* 90 Wn.2d at 705. We reject the Center's argument that it has unlimited authority to contract for janitorial services, and conclude that it does not.

*Id.* at 9-10.

We also decided in *Western Wash. Univ. v. Washington Fed'n of State Employees,* 58 Wn. App. 433, 793 P.2d 989 (1990), that the University was not free to establish a privatized police force. The University proposed a plan to contract out campus police services to the City of Bellingham and to abolish the existing campus police force. *Id.* at 435. The Federation obtained a declaratory ruling from the Higher Education Personnel Board that the proposed plan violated the collective bargaining agreement between the University and the Federation and violated the Board's rule regarding layoffs. *Id.* at 435-36. The University claimed that it had exclusive jurisdiction over the establishment of a police force and that the Legislature, by granting the University power to establish a police force under RCW 28B.10.550, intended to exempt such civil service employees from the protection of the Higher Education Personnel Law. *Western,* 58 Wn. App. at 437-38. The statute that the University relied on, RCW 28B.10.550, provides that the school board may "establish a police force for its own institution, which force shall function under such conditions and regulations as the board prescribes." But former

RCW 28B.16.030 (repealed 1993) stated that the Higher Education Personnel Law shall apply to all personnel of the institutions of higher education except those exempted under the provisions of former RCW 28B.16.040 (repealed 1993), which did not include police officers. *Western*, 58 Wn. App. at 438. We concluded that

> if the Legislature had intended to exempt campus police officers from the protection of the civil service laws by virtue of the mere grant of authority to such institutions to establish a police force, it would have indicated such intent either in the authorizing statute, RCW 28B.10.550, or by listing police officers as exempt personnel under RCW 28B.16.040. It did neither and, thus, we conclude that the University's power to establish a police force pursuant to RCW 28B.10.550 is subject to the Higher Education Personnel Law.

*Western*, 58 Wn. App. at 439. We also rejected the University's contention that its plan to contract out police services was permissible under former RCW 28B.16.240 (1979), which is substantially the same as RCW 41.06.380. *Western*, 58 Wn. App. at 442-43.

 The cases require a clear mandate in the enabling statute and/or require an amendment to the relevant civil service law to allow privatization of services historically performed and capable of being performed by state civil service employees. ES job specialists are not among the positions exempt from the state civil service law by either RCW 41.06.070 or RCW 41.06.076. There is no amendment to the civil service law that permits this type of contract. Thus, the DSHS-Oberg contract was not legal under RCW 41.06.380.

Affirmed.

HOUGHTON, C.J., and HUNT, J., concur.