[Cite as *State ex rel. More Bratenahl v. Bratenahl*, 2017-Ohio-8484.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105281**

# STATE OF OHIO EX REL. MORE BRATENAHL, ET AL.

RELATORS-APPELLANTS

vs.

# VILLAGE OF BRATENAHL, OHIO, ET AL.

RESPONDENTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-857888

**BEFORE:** Kilbane, J., Keough, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 9, 2017

**ATTORNEY FOR APPELLANT**

Christopher P. Finney
Finney Law Firm, L.L.C.
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio 45245


**ATTORNEYS FOR APPELLEE**

David J. Matty
Mark B. Marong
Shana Samson
Matty Henrikson & Greve, L.L.C.
55 Public Square, Suite 1775
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Relator-appellant, state of Ohio ex rel. Patricia Meade ("Meade"), appeals from the trial court's decision granting summary judgment in favor of respondents-appellees, the village of Bratenahl ("Bratenahl"), Mayor John Licastro, and Councilmembers Mary Beckenbach, James Puffenberger, Erin Smith, Geoffrey Williams, and Marla Murphy (collectively referred to as "Bratenahl Councilmembers"). For the reasons set forth below, we affirm.

**{¶2}** In January 2016, Meade, a Bratenahl resident, and State ex rel. MORE Bratenahl, a community news publication disseminated by Meade, filed a complaint against Bratenahl and its councilmembers (collectively referred to as "Bratenahl respondents") alleging that they violated or threatened to violate various provisions of Ohio's Open Meetings Act ("OMA") by casting secret ballots when selecting the Bratenahl Council President pro tempore in January 2015.[1] The OMA, which is popularly known as the Sunshine Law, mandates that all meetings of any public body are to be public meetings open to the public at all times. R.C. 121.22(C). Meade sought injunctive relief and an award of civil forfeiture and attorney fees.

**{¶3}** In April 2016, Meade filed an amended complaint, naming Bratenahl Mayor John Licastro as a respondent and adding three counts that expanded on the alleged violations of the OMA. Count 2 alleged that Licastro, Murphy, Puffenberger,

---

[1]In July 2016, State ex rel. MORE Bratenahl voluntarily dismissed all of its claims against defendants, leaving Meade as the sole plaintiff.

and Williams threatened to violate the OMA by failing to keep and maintain minutes of the Bratenahl Council Finance Committee for the meetings held on January 19, 2016, February 16, 2016, March 14, 2016, and April 18, 2016. In Counts 3 and 4, Meade alleges that Bratenahl Council conducted public business in illegal executive sessions in violation of the OMA on August 19, 2015 (Count 3) and November 19, 2014 (Count 4).[2]

{¶4} Meade sought a declaratory judgment that the Bratenahl Councilmembers violated or threatened to violate the OMA and sought an injunction prohibiting the councilmembers from conducting any votes by secret ballot, unless authorized by Ohio law, and mandating all defendants to maintain and prepare accurate council meeting minutes. Meade further sought a civil forfeiture fee of $500 for each distinct violation or threatened violation of the OMA, as well as court costs and attorney fees.

{¶5} In September 2016, Meade moved for summary judgment. In her motion, Meade alleges the following three separate violations or threatened violations of the OMA by the Bratenahl respondents:

(i)    using secret ballots to conduct official business of [Bratenahl Council];

(ii)   failing to keep and maintain minutes of the [Bratenahl Council Finance Committee,] which contain sufficient facts and information so as to permit the public to understand and appreciate the rationale behind the Committee's actions; and

(iii)  during the course of a public meeting [Bratenahl Council] held on August 19, 2015, conducting public business of the Council in an

---

[2]Meade dismissed Count 4 of the amended complaint in December 2016.

illegal executive session and/or entering in such executive session in violation of the requirements of the [OMA].

**{¶6}** The Bratenahl respondents opposed Meade's motion for summary judgment and filed their own cross-motion for summary judgment. In their motion, the Bratenahl respondents argued that Meade failed to meet her burden of persuasion by a preponderance of the evidence that they violated or threatened to violate the OMA.

**{¶7}** In December 2016, the trial court denied Meade's motion for summary judgment and granted summary judgment in favor of the Bratenahl respondents.

**{¶8}** It is from this order that Meade appeals, raising the following two assignments of error, which shall be discussed together:

Assignment of Error One

The trial court erred in granting summary judgment in favor of [the Bratenahl respondents].

Assignment of Error Two

The trial court erred in denying summary judgment in favor of [Meade].

**{¶9}** Within these assigned errors, Meade argues that the evidence establishes multiple violations or threatened violations of the OMA by the Bratenahl respondents. Specifically, the Bratenahl respondents: (1) used secret ballots to conduct official business of council; (2) failed to keep and maintain minutes of the Bratenahl Council Finance Committee; and (3) conducted public business in an illegal session on August 19, 2015. As a result, Meade contends that trial court erred when it denied her summary judgment motion and granted summary judgment in favor of the Bratenahl respondents.

<u>Standard of Review — Summary Judgment</u>

{¶10} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Summary judgment is appropriate under Civ.R. 56 when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

{¶11} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

<u>The OMA</u>

{¶12} R.C. 121.22 requires public bodies in Ohio to take official action and conduct all deliberations on official business in open meetings where the public can attend and observe such deliberations. Public bodies must provide advance notice to the public, indicating where and when the meetings will occur and, in the case of special meetings, state the specific topics the body will discuss. R.C. 121.22(F). "A plain

reading of R.C. 121.22 reveals the legislature's intent to require that all public bodies generally conduct their meetings in the open so that the public can have access to the business discussed or transacted therein." *Wyse v. Rupp*, 6th Dist. Fulton No. F-94-19,1995 Ohio App. LEXIS 4008,_11-12 (Sept. 15, 1995). "Its purpose is to assure accountability of elected officials by prohibiting their secret deliberations on public issues." *State ex rel. Cincinnati Enquirer v. Hamilton Cty. Commrs.*, 1st Dist. Hamilton No. C-010605, 2002-Ohio-2038, ¶ 2, citing *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 668 N.E.2d 903 (1996). However, if specific procedures are followed, public officials may discuss certain sensitive information privately in conformity with R.C. 121.22(G). *Id.* at ¶ 2-3.

{¶13} The party alleging a violation of the OMA must establish that the public body held a meeting with a majority of its members and that the meeting improperly excluded the public. *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 2012-Ohio-2569, 972 N.E.2d 115, ¶ 22-24 (12th Dist.), citing *State ex rel. Stern v. Butler*, 7th Dist. Jefferson No. 98-JE-54, 2001-Ohio-3404; *State ex rel. Sigall v. Aetna*, 45 Ohio St.2d 308, 345 N.E.2d 61 (1976). The burden then shifts to the public body to produce evidence demonstrating that the meeting at issue properly fell within one of the statutory exceptions. *Id.* at ¶ 25.

Election of President Pro Tempore

{¶14} Meade first argues that the Bratenahl respondents violated the OMA at the January 21, 2015 Bratenahl Council meeting when the Bratenahl councilmembers used "secret written ballots" to elect the president pro tempore.

{¶15} In the instant case, a review of the record reveals that two councilmembers were nominated to serve as president pro tempore at the January 2015 meeting. Councilmember Beckenbach then expressed her desire to take the vote by secret ballot. In response, then-Councilmember Laura Bacci inquired as to whether voting by secret ballot was legal. The members of the Bratenahl Council proceeded to vote by handwriting their respective votes and names on a piece of paper and handing their votes to David Matty ("Matty"), Bratenahl's Solicitor. Matty reviewed and counted the ballots. After counting the votes, Matty declared that another vote had to be taken because a vote had been cast for an individual who was not nominated for president pro tempore. Matty advised the councilmembers that they could only vote for one of the two individuals that had been nominated for president pro tempore.

{¶16} A second set of ballots was then cast by the councilmembers. Matty reviewed and counted the second set of ballots. Thereafter, Matty announced that the results of the second set of ballots for president pro tempore resulted in a tie vote. As a result, the councilmembers cast a third set of ballots in the same manner as the first and second set of votes. After Matty reviewed and counted the third set of ballots, he announced that Councilmember Puffenberger had been elected president pro tempore of Bratenahl Council. Councilmember Puffenberger served in the capacity of president pro

tempore until December 31, 2015. Councilmember Puffenberger was reappointed as president pro tempore by a public vote on January 21, 2016.

**{¶17}** In support of her argument, Meade relies on 2011 Ohio Atty. Gen. Ops. No. 2011-038 for the proposition that secret ballots are a violation of the OMA. In this opinion, the Ohio Attorney General was specifically asked whether it was permissible for the Ohio Board of Education to vote by secret ballot in an open meeting. The Attorney General concluded that "the State Board of Education could not vote in an open meeting by secret ballot." *Id.* In reaching his decision, the Attorney General stated:

> R.C. 121.22 does not address explicitly the use of secret ballots by the members of a public body, nor does any other provision of the Revised Code address the use of secret ballots by the Board. Voting by secret ballot is a process of voting by slips of paper on which the voter indicates his vote. [*Robert's Rules of Order, Newly Revised*, 412 (11th Ed.2011)]; *Black's Law Dictionary* 143 (6th Ed.1990). Voting by secret ballot is "used when secrecy of the members' votes is desired." *Robert's Rules of Order, Newly Revised*, at 412. When a secret ballot is used, the vote "is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed." *Black's Law Dictionary* 143 (6th Ed.1990); *see also Webster's Third New International Dictionary* 2052 (unabr. ed. 1993) (defining "secret" as something "kept hidden" or "kept from the knowledge of others, concealed as part of one's private knowledge").
>
> No Ohio courts and only one Attorney General opinion have confronted the use of secret ballot voting by a public body that is subject to the requirements of R.C. 121.22. *See* 1980 Op. Att'y Gen. No. 80-083 (syllabus, paragraph 4) ("R.C. 121.22 does not require a roll call vote or prohibit voting at a meeting subject to that section by 'secret ballot'").

(Emphasis added.) *Id.* at 3.

**{¶18}** The Attorney General went on to state that "[i]f the votes of the individual members of a public body are denied public scrutiny, the public is unable to properly

evaluate the decision-making of the public body and hold its members responsible for their decisions." *Id.* at 5.

{¶19} In the instant case, the ballots were handwritten in open session and included the name of the nominated individual as well as the name of each councilmember issuing the vote. The written ballots were then maintained by Bratenahl as a public record and subsequently produced to Meade. Because the votes were cast in open session, identify each councilmember's name with each respective vote and were made public record, the votes were not "secret" like the votes in the Attorney General's opinion. Here, the name of the nominated individual and the respective councilmember were not concealed from the public, and the public was not denied the knowledge of Bratenahl's decision-making process. Based on these circumstances, Meade is unable to establish her burden by the preponderance of the evidence that the Bratenahl respondents violated or threatened to violate the OMA on January 21, 2015.

Finance Committee Minutes

{¶20} Meade next argues that the Bratenahl respondents violated or threatened to violate the OMA when the Finance Committee's meeting minutes failed to contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the committee's actions. Specifically, Meade contends certain meeting minutes indicate that various items came before the committee, the action taken thereon, and the votes of the committee members on a motion to effectuate that action, but when consideration is given to the length of these meetings and the limited number of items

considered, there clearly would have been significantly more involved than simply a motion and vote concerning each item. Meade acknowledges that the audiovisual recordings she obtained of the meetings fully revealed the discussions and information at each meeting.

{¶21} R.C. 121.22(C) provides that

[t]he minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this section.

{¶22} The Ohio Supreme Court has defined "minutes" by its common definition: "'a series of brief notes taken to provide a record of proceedings * * *: an official record composed of such notes. Webster's Third New International Dictionary (1986) 1440.'" *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 421, 667 N.E.2d 1223, fn. 3 (1996).

{¶23} *White* involved a request of certain meeting minutes of the Clinton County Board of Commissioners, and the court's interpretation of R.C. 305.10 (Record of proceedings by Board of County Commissioners) and its interplay with R.C. 121.22 and 149.43 (Ohio Public Records Act).[3] White argued that these statutes impose a duty on boards of county commissioners to prepare minutes that reflect the substance of their

---

[3]White sought a writ of mandamus compelling the Clinton County Board of Commissioners to prepare complete and accurate minutes of all Board policies. The minutes provided by the Board failed to document new policies adopted by the Board and were missing a page.

meetings and provide some indication of the nature and direction of their discussions. The court agreed, and concluded that these statutes, when read together, impose a duty on boards of county commissioners to maintain a full and accurate record of their proceedings. *Id.* at 418. In reaching its decision, the *White* court stated:

> We recognize that it is not the business of this court to micro-manage the public record-keeping procedures of local governments; public bodies should be trusted with a certain degree of latitude in the preparation of minutes and other records of their proceedings. Accordingly, we resist the temptation to prescribe any particular means of satisfying R.C. 121.22 and 305.10. Audio- or videotape recordings, word-for-word transcripts, even abstracts of the discussions indicating the identity of the speakers and the chronology and substance of their statements, are all legitimate means of satisfying the requirements of R.C. 121.22 and 305.10. Accordingly, we refrain from laying down specific guidelines, other than the dictate that for public records maintained under R.C. 121.22 and 305.10, full and accurate minutes must contain sufficient facts and information to permit the public to understand and appreciate the rationale behind the relevant public body's decision.

*Id.* at 424.

{¶24} In the instant case, the meeting minutes in question provide an accurate and adequate record of the Finance Committee's proceedings, recommendations, and the Bratenahl Council's actions on the same. The minutes at issue reference the ordinance and resolution numbers being considered for recommendation to council, identification of each motion, some discussion, and the votes of the committee members. Additionally, Meade acknowledges that the meetings were audio recorded and fully revealed the discussions and information at each meeting. Under *White*, "[a]udio- or videotape recordings * * * are all legitimate means of satisfying the requirements of R.C. 121.22." *Id.* at 424.

**{¶25}** Based on these circumstances, Meade failed to establish a violation or threatened violation with regard to the Finance Committee's minutes.

Executive Session

**{¶26}** Lastly, Meade argues that the Bratenahl respondents did not comply with the conditions precedent for holding an executive session at the August 19, 2015 Bratenahl Council meeting.

**{¶27}** An executive session is a closed-door conference convened by a public body, after a roll call vote, that is attended by only the members of the public body (and those they invite), that excludes the public. R.C. 121.22(G). The OMA allows for executive sessions in certain limited circumstances. R.C. 121.22(G)(1)-(8); *State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 2001-Ohio-130, 748 N.E.2d 58. As relevant here, they include the consideration of the purchase of property for public purposes and conferences with an attorney concerning disputes involving the public body that is the subject of pending or imminent court action. R.C. 121.22(G)(2)-(3).

**{¶28}** Meade acknowledges that the record provides an after-the-fact assertion that a motion to enter executive session was made, but contends that the official record fails to indicate whether the motion to enter executive session stated an actual purpose and whether there was a roll call vote.

**{¶29}** However, a review of the audio recording of the August 19, 2015 Bratenahl Council Meeting evidences that the motion and roll call vote to hold executive session were clearly taken. The motion and roll call vote took place before the court reporter

began transcribing the record. The roll call vote is also reflected in the Bratenahl Clerk's notes, which was provided during discovery. Additionally, the transcript of the August 19, 2015 meeting indicates council's entrance into executive session. Mayor Licastro asked that the record reflect that council went into executive session to talk about acquisition of land and threatened litigation, which is permissible under R.C. 121.22(G)(2)-(3). Mayor Licastro also states that the motion to enter executive session was made by Councilmember Puffenberger and seconded by Councilmember Murphy. Mayor Licastro then states that Councilmember Puffenberger made the motion to return to the public session and the motion was seconded by then-Councilmember Bacci. The foregoing satisfies the statutory requirements for entering an executive session.

{¶30} In light of the foregoing, we find that Meade offered no evidence to rebut the presumption that the Bratenahl respondents did not comply with the OMA. Therefore, we find that the trial court properly granted summary judgment in favor of the Bratenahl respondents and properly denied Meade's motion for summary judgment.

{¶31} The first and second assignments of error are overruled.

{¶32} Judgment is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
TIM McCORMACK, J., CONCUR